IN THE UNITED STATES COURT of FEDERAL CLAIMS

| | | |
|---|---|---|
| DONALD L. DISMORE and BETTYE G. DISMORE | § | |
| | § | |
| Plaintiffs, | § | CIVIL NO. 04-1787T |
| v. | § | |
| | § | Judge Allegra |
| | § | |
| UNITED STATES OF AMERICA | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS' RESPONSE TO MOTION OF THE UNITED STATES FOR DISMISSAL OF PLAINTIFFS' §§447/481 ALTERNATIVE CLAIM AND BRIEF IN SUPPORT THEREOF

In response to the United States' motion for partial dismissal of Plaintiff Donald L. Dismore and Bettye G. Dismore's claim for refund of tax related to adjustments to §§447/4481 income for 1995, which was made in the alternative to their primary claim for relief, the Dismores would show the Court as follows:

### A. Introduction and Summary of Argument

The government's argument is, essentially, that the Court does not have jurisdiction over the Dismores' alternative §447/481 claim because it is a request for an adjustment to a partnership item. Addressing this issue requires an understanding of the interplay between partnership items and nonpartnership items and the limited jurisdiction with respect to each type of item in TEFRA related cases.

"Partnership item" is a legal term of art defined at §6231(a)(3):

> (3) PARTNERSHIP ITEM.—The term "partnership item" means, with respect to a partnership, **any item required to be taken into account for the partnership's taxable year under any**

> **provision of subtitle A** to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level. [Emphasis added.]

Anything that is (or is treated as) not a partnership item is a "nonpartnership item."[1]

Under TEFRA, "partnership items" are audited and adjusted at the partnership level using centralized audit and litigation procedures set out at §§6221-6233.[2] "Nonpartnership item" determinations are reserved for separate partner level proceedings after the TEFRA partnership level proceedings are concluded and are subject to the same procedures as individual deficiencies, *e.g.* §§6211-6216.[3]

By statute and precedent, partnership item and nonpartnership item proceedings are mutually exclusive.[4] Partnership items cannot properly be the subject of individual partner- level proceedings and can only be the subject of partnership-level proceedings. Nonpartnership items cannot properly be the subject of partnership-level proceedings and can only be the subject of individual partner-level proceedings.

Pursuant to 26 U.S.C. §7422(h) no action for a tax refund attributable to partnership items can be brought in a partner-level proceeding *except as provided in §6228(b) or §6230(c)*. Under §6230(c), this Court has jurisdiction in a partner-level proceeding over (i) claims that the Secretary

---

1 §6231(a)(4); *Callaway v. Commissioner*, 231 F.3d 106, 108 (2nd Cir. 2000).

2 §§6211(c), 6216(4), 6221, 6223, 6230(a)(1), and 6226.

3 *Crnkovich v. United States*, 202 F.3rd 1325, 1328, 1332, 1333 (Fed.Cir. 2000); *See also, Callaway* at 108.

4 *Callaway*, at 108; See generally *Maxwell v. Commissioner*, 87 T.C. 783, 788 (1986).

erroneously computed any computational adjustment necessary to apply to the partner a settlement[5] and (ii) claims that the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement.[6]

Moreover, in certain circumstances, partnership items can "convert" to nonpartnership items and can, therefore, be addressed in partner-level actions. Items cease to be partnership items and become nonpartnership items whenever the Secretary or the Attorney General (or his delegate) enters into a settlement agreement with the partner with respect to such items.[7]

**B. The Dismores and the IRS Settled the §447/481 Issue**

The Court of Federal Claims recognizes established precedent that a tax settlement constitutes a contract and general principles of contract law govern the interpretation of a tax settlement.[8]

> [A]lthough not addressed directly by this [Federal] circuit, the law regarding tax settlement agreements has been clearly articulated:
>
> > A settlement agreement is a contract; mutual forbearance supplies the consideration. As such, we interpret its terms using general contract law principles. *Treaty Pines* .... If the language of the agreement is unambiguous, we will not consider any extrinsic evidence: the meaning will be determined from the terms encompassed within the proverbial four comers of the agreement. *Goldman*, ....
> > *Estate of Kokernot v. C.I.R.*, 112 F.3d 1290, 1294 (5th Cir.1997); ...
> > *Slovacek v. U.S.*, 36 Fed. Cl. 250, 256 (1996).[9]

---

5 §6230(c)(1)(A)(ii).

6 §6230(c)(1)(B).

7 §6231(b)(1)(C).

8 *Goldman v. C.I.R.*, 39 F.3d 402, 405 (2nd Cir. 1994) citing *Treaty Pines Invs. Partnership v. C.I.R.*, 967 F.2d 206, 211 (5th Cir. 1992).

9 *Buesing v. U.S.*, 47 Fed.Cl. 621, 629-630 (2000), citations omitted.

As recognized by the Supreme Court, the Court of Federal Claims also has a long history of recognizing implied-in-fact contracts, which are agreements "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."[10]

The Court of Federal Claims also has a long history of recognizing that tax settlements may be effectuated by implied-in-fact contracts, so long as there is (1) mutuality of intent to contract; (2) consideration; and, (3) lack of ambiguity in offer and acceptance.[11] Implied-in-fact tax settlements do not require an express offer and acceptance, but the parties' conduct must indicate mutual assent.[12] In addition, the IRS representative whose conduct is relied upon must have actual authority to bind the IRS in contract.[13]

The Dismores and the IRS entered into a Form 870-P(AD) settlement agreement as to their C85 partnership items for 1985. As a part of that settlement, the Liguna Nigel Appeals Office in California, through Jerry Gossett, the Appeals Officer who issued the settlement offer on behalf of the IRS, communicated to many of the partners, through their counsel, that as a part of the settlement the partners in twenty-six of the AMCOR partnerships would be allowed to reverse a portion of the

---

10 *U.S. v. Winstar*, 518 U.S. 839, 914, 116 S.Ct. 2432, 2474, (1996) (Breyer, concurring), *citing Baltimore & Ohio R. Co. v. United States,* 261 U.S. 592, 597, 43 S.Ct. 425, 426-427, 67 L.Ed. 816 (1923) and *Hercules, Inc. v. United States,* 516 U.S. 417, 424, 116 S.Ct. 981, 986-987, 134 L.Ed.2d 47 (1996). *See also City of Cincinnati v. United States,* 153 F.3d 1375, 1377 (Fed.Cir.1998).

11 *Buesing* at 630, *citing Total Med. Management, Inc. v. United States,* 104 F.3d 1314, 1319 (Fed.Cir.1997), *cert. denied,*522 U.S. 857, 118 S.Ct. 156, 139 L.Ed.2d 101 (1997)and *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir.1990), *cert. denied,*501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991).

12 *Id.*

13 *Id.*

§§447/481 partnership income reported in 1995 or 1996. See the fax from Gossett to Jim Joseph attached as Exhibit P-1.

A copy of that fax was sent by Gossett to counsel for the Dismores. The amounts of the agreed adjustments to §§447/481 income pursuant to the settlement were the subject of discussions between representatives from Redding & Associates, P.C., and Gossett. See Exhibits P-2 and P-3 attached.

The July 30th fax from Gossett to Joseph included a detailed schedule prepared by the IRS of the amount of §447/481 deferred income that the IRS agreed to reverse for each partnership in each relevant year as part of the settlement. See Exhibit P-1. According to the schedule, C85 would be allowed to reverse §§447/481 income in the amount of $465,462.00. See the forth column of the schedule attached to Exhibit P-1, "1995 Partnership Income to reverse for Settlement." A footnote to the "1995 Partnership Income to reverse for Settlement" heading instructed that the "partners should use their first-year ownership percentage as shown on the schedule K-1 and multiply that times the amount shown in the column" to calculate the amount of each partner's adjustment to income.

The first-year of ownership for the Dismores for C85 was 1985, the year C85 was formed and commenced business. The Dismores do not have a copy of their 1985 schedule K-1 for C85, and they have been unable to obtain a copy of the original 1985 partnership return from the partnership.[14]

---

[14] One argument supporting the §6404 claim for interest abatement at issue in the other AMCOR related cases, including *Hinck v. United States*, is that when the IRS returned the improperly seized partnership books and records, they were in disarray and records were missing. Counsel for Redding & Associates, P.C., traveled to the AMCOR partnership headquarters and copied all available partnership tax returns for the years at issue in this litigation. The C85 books and records, including the C85 1985 Form 1065 and supporting Schedule K-1s, were not available to be copied and do not appear to have been returned by the IRS.

However, the original schedule K-1 was filed with the IRS and, consequently, the amount of the Dismores' first-year percentage in C85 was known to the IRS at the time it issued the schedule of adjustments attached to Gossett's July 30th fax.

Although not attached to or included with the Form 870-P(AD) for 1985, the July 30th fax represents the IRS's express representation to allow the partners to reverse a portion of the §§447/448 partnership income and was made contemporaneously by the same Appeals Office that formulated the Form 870-P(AD) that the Dismores and hundreds of other AMCOR partners signed and returned. The partners, including the Dismores, relied upon the IRS's §§447/481 representation in entering into the Form 870-P(AD)s.

Since that fax was sent out in 1997, the IRS has allowed and routinely paid dozens of claims for refund based on §§447/481 income for 1995 and 1996 filed by AMCOR partners represented by the same counsel that represent the Dismores in this action.

There was a settlement between the Dismores and the IRS with respect to the §§447/481 claim at issue here. The IRS representations that it would allow the 1995 or 1996 §§447/481 income was a formal settlement of that issue. At the very least it was an informal settlement of that issue.

The Court of Federal Claims recognizes that both formal and informal settlement of tax controversies converts partnership items into nonpartnership items.[15] Here the Dismores' share of the 1995 §447/481 income from C85 was converted to a nonpartnership item in 1997 when they executed the Form870-P(AD). Consequently, this claim for refund fits squarely within the §6230(c) exception to the §7422(h) jurisdictional bar.

The government has asserted that any such §6230(c) exception does not apply here because

---

[15] *Crnkovich, supra* (stipulation of settlement was settlement agreement that converted partnership items to nonpartnership items and commenced one year statute of limitations for assessment).

there can be no substantive review of the treatment of the §§447/481 partnership items because of the July 19, 2001 Tax Court decision regarding §§447/481 at Docket No. 1862-01 ("*Coachella-85*"). In essence, the government asserts that the §§447/481 adjustments that the IRS expressly agreed it would settle should be undone and the settled partners should be bound by a decision entered in a matter that was not filed or decided until 2001, four years after the Dismores executed the Form 870-P(AD) on May 17, 1997, and two years after they filed a claim for refund on April 1, 1999.

Contrary to the government's assertion, the Dismores were not parties to and were not bound by the outcome of the *Coachella-85* AAR proceeding. While the general rule pursuant to §6228(a)(4) is that the individual partners are parties to AAR proceedings filed by the Tax Matters Partner, the exception is that partners must have interest in outcome of that proceeding. Partners are not parties to partnership-level AAR proceedings if they have converted their partnership items for the year at issue.[16]

Here the Dismores settled and converted their §§447/481 items into nonpartnership items when they entered into the Form 870-P(AD) settlement in reliance on the IRS's agreement to allow the 1995 §§447/481 adjustment. Consequently, they were no longer eligible to be parties and were not parties to *Coachella-85* to the extent of any §§447/481 adjustments when the Tax Matters Partner filed that action four years later.

In addition, the 1995 §§447/481 income is an affected item, which is mathematically determined as a computational adjustment resulting in a proportionate reduction based on the disallowed 1985 deduction being recaptured in 1995. Therefore, it is directly a claim for refund of an overpayment resulting directly from a change to an affected item as defined in §6230(a)(5) and

[16] §6228(a)(4)(B).

directly connected to the 1985 agreed adjustments. Thus, the claim falls squarely under §6230(c)(1)(B) and is timely under §6230(c)(2)(B). This suit was timely filed under §6230(d)(3).

The 1995 §447/441 recapture income was both a partnership item for 1995 and an affected item affected by the changes to the 1985 partnership item. The status of the 1995 item as a partnership items was converted, pursuant to §6231(b)(1)(C), to that of a nonpartnership item because, as an affected item, the settlement entered into was with respect to that affected item as well as the 1985 partnerships items.

Furthermore, under §6230(d)(5), the IRS was mandated to compute and make the relevant refund without the partners even being required to file a claim. Based on Gossett's fax and the attached schedule of adjustments, it was clear that the IRS had all the necessary information to issue the resulting refunds - the amount of the adjustment and the partners' percentage interests from the schedule k-1s. Nonetheless, the IRS chose to ignore its mandated duty to issue the §447/481 refunds.

Finally, the Dismores are not requesting that this Court substantively review the merits of the §§447/481 partnership items, but to enforce the settlement agreement between the Dismores and the IRS with respect to those items, which is an action over which this Court has jurisdiction.[17]

### C. The Dismores' Claim Was Not an AAR

Because the 1995 §§447/481 item was converted to a nonparternship item, either because it was settled by direct formal or informal settlement, as argued above, or alternatively, because it was converted to a nonpartenrship item as a result of its status as an affected item subject to computational adjustment based on the direct partnership items settled for 1985, which summarizes the two arguments above, the Dismores' claim was not an AAR for a partnership item.

---

[17] *Alexander v. United States,* 44 F.3d 328, 331 (5th Cir.1995); *Treaty Pines* at 210; *Olson v. United States*, 37 Fed.Cl. 727,733 (1997).

**D. Conclusion**

The Dismores' claim falls within the §6230(c) exception to the §7422(h) bar on this Court's jurisdiction.

This Court has jurisdiction over the Dismores' claim because it is not an action on the substantive merits of the §447/481 claim, but an action to enforce the settlement agreement entered into between the IRS and the Dismores. This Court also has jurisdiction over the Dismores' §§447/481 claim because the Dismores and the IRS entered into a settlement agreement that converted their partnership items to nonpartenrship items over which this Court has jurisdiction.

The IRS made an express representation to the AMCOR partners and their counsel, including the Dismores, that it would adjust the various AMCOR partnerships' §§447/481 partnership items for 1995 or 1996, which included an express representation that the §§447/481 items for C85 for 1995 would be adjusted. The Dismores entered into the Form870-P(AD) settlement and agreed to pay the adjustments to the1985 partnership items, to which the 1995 §447/481 items relate, in consideration for and reliance on the IRS's representation that it would allow an adjustment to the stated portion of the §§447/481 items for 1995.

The IRS has honored dozens - if not hundreds - of AMCOR partner claims for refund directly resulting from the §§447/481 adjustments for other AMCOR partners. The government has failed to distinguish the Dismores' claim for refund from the other §§447/481 AMCOR related claims for 1995 and 1996 that the IRS has processed and routinely paid as a matter of course and without question. In fact, based upon representing over 600 of the AMCOR partners, counsel for the Dismore's is unaware of any other §447-487 1995 or 1996 refund claim being denied on the grounds now asserted by Defendant.

WHEREFORE, Plaintiffs Donald L. Dismore and Bettye G. Dismore object to the Motion of the United States for Dismissal of Plaintiffs' §§447/481 Alternative Claim and pray that the Court deny that motion.

Respectfully,

/s/ Teresa J. Womack

Teresa J. Womack
Redding & Associates, P.C.
2419 W. T.C. Jester
Houston, Texas 77018
713-965-9244
713-621-5227 (Fax)
**Counsel for Donald L. Dismore and Bettye G. Dismore**

Of Counsel for Plaintiffs:
Thomas E. Redding
Texas State Bar No. 16661300
Sallie W. Gladney
Texas State Bar No. 00787546
Redding & Associates, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
(713) 965-9244
(713) 621-5227 (Fax)