No. 04-1787 T
(Judge Francis M. Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DONALD L. DISMORE and BETTYE G. DISMORE,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

REPLY TO PLAINTIFFS' RESPONSE TO MOTION OF THE UNITED STATES FOR DISMISSAL OF PLAINTIFFS' §§ 447/481 ALTERNATIVE CLAIM

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
STEVEN I. FRAHM
BART D. JEFFRESS
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6580

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DONALD L. DISMORE and BETTYE G. DISMORE, | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04-1787 |
| v. | ) | The Honorable Francis M. Allegra |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

REPLY TO PLAINTIFFS' RESPONSE TO MOTION OF THE UNITED STATES FOR DISMISSAL OF PLAINTIFFS' §§ 447/481 ALTERNATIVE CLAIM

**PAGE**

**TABLE OF CONTENTS**

Reply to Plaintiffs' Response to Motion of the United States for Dismissal of Plaintiffs' §§ 447/481 Alternative Claim . . . . . 1

I. Plaintiffs' July 17, 1997 Form 870-P(AD) settlement agreement unambiguously covered only C85's 1985 partnership items, and therefore extrinsic evidence cannot be used to add to it terms covering C85's 1995 partnership income . . . . . 3

II. C85's 1995 partnership income was never converted to a non-partnership item, and the Court therefore may not adjust that income and plaintiffs' resulting distributive share . . 9

III. Conclusion . . . . . 13

**PAGE**

**TABLE OF AUTHORITIES**

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 702 . . . . . 1, 10
§ 6223 . . . . . 12
§ 6224 . . . . . 12
§ 6226 . . . . . 12

§ 6227 . . . . . . . . . . 2, 12
§ 6228 . . . . . . . . . . 1, 2, 12
§ 6230 . . . . . . . . . . 1, 2, 10, 11, 13
§ 6231 . . . . . . . . . . 1, 4, 10, 11, 12
§ 7422 . . . . . . . . . . 1, 13

**Cases:**

Buesing v. United States, 47 Fed. Cl. 621 (2000) . . . . . . . . . . 3, 4
City of El Centro v. United States, 922 F.3d 816 (Fed. Cir. 1990) . . . . . . . . . . 3
Coast Fed. Bank, FSB v. United States, 323 F.3d 1035 (Fed. Cir. 2003) (en banc) . . . . . . . . . . 4
Goldman v. Commissioner, 39 F.3d 402 (2nd Cir. 1994) . . . . . . . . . . 4
Kraemer v. United States, No. CIV. H-00-2948, 2002 WL 575791 (S.D. Tex. Feb. 13, 2002) 6, 7
Trauma Serv. Group v. United States, 104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . 3
Total Med. Management, Inc. v. United States, 104 F.3d 1314 (Fed. Cir. 1997) . . . . . . . . . . 3
Weiner v. United States, 255 F.Supp.2d 624 (S.D. Tex. 2002) . . . . . . . . . . 6, 7
Weiner v. United States, 255 F.Supp.2d 663 (S.D. Tex. 2002) . . . . . . . . . . 6

**Miscellaneous:**

Treas. Reg. (26 C.F.R.)
§ 301.6231(a)(3)-1(a)(1)(i) (1986) . . . . . . . . . . 1, 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 04-1787 T
(Judge Francis M. Allegra)

DONALD L. DISMORE and BETTYE G. DISMORE,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

REPLY TO PLAINTIFFS' RESPONSE TO MOTION OF THE UNITED STATES FOR DISMISSAL OF PLAINTIFFS' §§ 447/481 ALTERNATIVE CLAIM

Defendant, the United States, respectfully submits this reply in support of its motion for dismissal of plaintiffs' §§ 447/481 alternative claim. Plaintiffs' alternative claim seeks to reduce the distributive share reported on their 1995 return of Donald Dismore's partnership income of Coachella-85 Partners ("C85").

In its opening brief, the United States maintained that the Court lacks jurisdiction over plaintiffs' alternative claim. The claim asks the Court to adjust a partnership item, as defined in 26 U.S.C. § 6231(a)(3) -- C85's 1995 partnership income and as a result, Donald Dismore's distributive share of that income. See 26 U.S.C. § 702; Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i) (1986). Pursuant to 26 U.S.C. § 7422(h), the Court has no jurisdiction over the claim unless one of two exceptions applies, 26 U.S.C. § 6228(b) or 26 U.S.C. § 6230(c).

As we explained in our opening brief, 26 U.S.C. § 6228(b), which provides for the

judicial review of an administrative adjustment request filed by a partner pursuant to 26 U.S.C. § 6227(d), does not apply. Plaintiffs do not contest this point in their response, as they concede that plaintiffs' claim is not based on an administrative adjustment request. See Resp. [Doc. #28] at 8. Second, the United States demonstrated that, even assuming plaintiffs' claim qualifies as an action under 26 U.S.C. § 6230(c), the Court has no power in such an action to adjust the prior treatment of Donald Dismore's distributive share of C85's 1995 partnership income. Rather, 26 U.S.C. § 6230(c)(4) bars the Court from reducing the share, because C85 reported it as ordinary income on its 1995 partnership return (and the Dismores, as required, followed suit on their 1995 return), and that reporting has never been disturbed by a settlement, an IRS' final partnership administrative adjustment, or a judicial decision. In fact, the Tax Court explicitly ruled in *Coachella-85* on July 19, 2001, that there would be no adjustments to C85's 1995 reporting of ordinary income, and Donald Dismore was a party to that action pursuant to 26 U.S.C. § 6228(a)(4).

Plaintiffs' response [Doc. #28] raises two objections to the United States motion, both of which derive from plaintiffs' July 17, 1997 Form 870-P(AD) settlement with the IRS of C85's 1985 partnership items. See Mot. [Doc. #25] Ex. 1, App. B at 10. Plaintiffs argue that the IRS agreed as part of the settlement to permit a partial reduction of the C85 1995 income plaintiffs reported on their 1995 return. Plaintiffs also argue that, even if the settlement of C85's 1985 partnership items did not include C85 1995 partnership income, the settlement as a matter of law automatically triggered a partial reduction of the 1995 income (and correspondingly plaintiffs' reported distributive share).

Both contentions lack merit. As explained below, the IRS and plaintiffs never entered a

settlement agreement, formal or informal, with respect to C85's 1995 income, and the settlement of C85's 1985 partnership items could not as a matter of law also settle a 1995 partnership item *sub silencio*.

**I. Plaintiffs' July 17, 1997 Form 870-P(AD) settlement agreement unambiguously covered only C85's 1985 partnership items, and therefore extrinsic evidence cannot be used to add to it terms covering C85's 1995 partnership income.**

Before addressing plaintiffs' contention that their July 17, 1997 settlement agreement encompassed C85's 1995 partnership income, we examine the law governing tax settlements. Tax settlements are contracts, and thus subject to the law generally applicable to all contracts. See generally Buesing v. United States, 47 Fed. Cl. 621, 630-31 (2000). The Court of Federal Claims has jurisdiction over two types of contracts; express and implied in fact. See e.g. Trauma Serv. Group v. United States, 104 F.3d 1321, 1324 (Fed. Cir. 1997). The elements for a binding contract with the United States are identical for either type: 1) mutual intent to contract, which includes an offer, acceptance, and consideration; 2) lack of ambiguity in offer and acceptance; and 3) actual authority on the part of the Government representative who enters or ratifies the agreement. See e.g. id. at 1325; see also e.g. Total Med. Management, Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir. 1997); City of El Centro v. United States, 922 F.3d 816, 820 (Fed. Cir. 1990). With respect to implied in fact contracts, the offer and acceptance need not be explicit, but may be inferred from the parties' conduct. See e.g. Buesing, 47 Fed. Cl. at 630.

The party alleging the existence of a contract bears the burden of establishing its essential elements. See e.g. Trauma Serv. Group, 104 F.3d at 1325. Where a valid express written contract exists and its language is unambiguous, extrinsic evidence may not be used to vary,

expand, add to, or explain the contract's terms – rather the terms must be interpreted in accord with their plain meaning. See e.g. Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1038, 1040 (Fed. Cir. 2003) (en banc); Buesing, 47 Fed. Cl. at 630. Applying this principle, the Second Circuit Court of Appeals has held that a Form 870-AD settlement agreement could not be expanded to encompass tax liability for 1982, where its terms unambiguously mentioned only tax liability for 1981 and did not refer to any other tax year. See Goldman v. Commissioner, 39 F.3d 402, 405-06 (2nd Cir. 1994).

According to plaintiffs, as part of their July 17, 1997 Form 870-P(AD) settlement of C85's 1985 partnership items, the IRS agreed to permit a partial reduction of the C85 1995 income plaintiffs had reported on their 1995 return. Plaintiffs thereby conclude that the settlement converted the C85 1995 income from a partnership item to a non-partnership item pursuant to 26 U.S.C. § 6231(b)(1)(C), so that the bar against litigating partnership items in a partner level refund suit does not apply.

In their effort to advance this claim, plaintiffs rely on a July 30, 1997 facsimile from Jerry Gossett, an IRS appeals officer, to a Jim Joseph. The facsimile suggests that "partners who settled and are entitled to file claims for the 1995 ... year[]" could reduce previously reported C85 1995 partnership income by the sum of their first-year ownership percentage in C85 times the amount shown for C85 in a column labeled "1995 Partnership Income to Reverse for Settlement." Plaintiffs claim that, in consideration for and reliance upon the July 30, 1997 facsimile, they entered into their July 17, 1997 Form-870 P(AD) settlement agreement, and thus,

presumably, that the statements in the facsimile are incorporated as terms into the agreement.[1]

Plaintiffs' claim that the settlement of partnership items for 1985 ~~year~~ also includes an agreement to make adjustments to 1995 partnership items lacks merit. The July 30, 1997 facsimile is extrinsic evidence, and thus, even if it had predated the July 17, 1997 settlement of C85's 1985 partnership items, it could not be used to expand the unambiguous terms of that agreement. The agreement, see Mot. [Doc. #25] Ex.1, App. B at 10, explicitly and unambiguously cabins itself to the partnership items of C85 for the partnership's taxable year ending December 31, 1985. No mention whatsoever is made of C85's 1995 partnership items or of any taxable year other than 1985. In addition, the agreement explicitly and unambiguously states that the Form 870-P(AD) constitutes in the first instance plaintiffs' offer to settle with the IRS, and that the agreement is not effective until accepted by the IRS. Yet, plaintiffs concede that they did not attach or include the July 30, 1997 facsimile with their offer. See Resp. [Doc. #28] at 6. In sum, when the IRS accepted plaintiffs' Form 870-P(AD) offer by countersignature dated July 17, 1997, the settlement agreement unambiguously covered only C85's 1985 partnership items and nothing else, and therefore the July 30, 1997 facsimile may not be added to that agreement.[2]

---

[1] Plaintiffs also attach two other facsimiles to their response, both from Jerry Gossett to Thomas Redding, plaintiffs' former attorney of record in this litigation, and respectively dated July 6, 1999 and July 19, 1999. These facsimiles do not reference C85, and do not in any material way add to the force of the July 17, 1997 facsimile.

[2] The Form 870-P(AD) provided by plaintiffs' counsel to the United States pursuant to Court ordered informal discovery and attached to the United States' motion to dismiss is incomplete. See Order [Doc. #18] ¶ 1; Mot. [Doc. #25] Ex. 1, App. B at 10. It states, "the undersigned offers to enter into a settlement agreement with respect to the determination of partnership items of the partnership for the year shown on the attached schedule of adjustments," but does not include the referenced attached schedule. That the determination shown on the

In addition, plaintiffs offer neither explanation nor support for their extraordinary claims that a July 30, 1997 facsimile was incorporated into and became part of a Form 870-P(AD) settlement that was finalized thirteen days earlier, and that plaintiffs relied upon this July 30, 1997 facsimile when offering, by signatures dated March 26, 1997, to settle C85's 1985 partnership items. Obviously, these assertions are nonsense - one cannot rely on a document that does not yet exist when entering or offering to enter into a settlement agreement.

Indeed, plaintiffs' counsel steadfastly has opposed the incorporation of any extrinsic documents into Form 870-P(AD) in other AMCOR cases involving AMCOR partner settlements substantially similar to plaintiffs' Form 870-P(AD) settlement agreement. See Weiner v. United States, 255 F.Supp.2d 663, 670-71 (S.D. Tex. 2002); Weiner v. United States, 255 F.Supp.2d 624, 655 (S.D. Tex. 2002); Kraemer v. United States, No. CIV. H-00-2948, 2002 WL 575791, at *2, 12 (S.D. Tex. Feb. 13, 2002). In both Weiner and Kraemer, the United States argued that a document entitled "Summary of the AMCOR Appeals Settlement Offer" or "SAASO" was incorporated into and a part of the AMCOR partners' Form 870-P(AD) settlement agreement, and therefore such partners had agreed to the assessment of tax motivated interest under 26 U.S.C. § 6621(c), as stated in the SAASO. Plaintiffs' counsel urged the following: "Weiner denies receiving the SAASO, but argues that even if he did receive it, the SAASO is not a part of

---

attached schedule encompassed solely partnership items of C85's 1985 taxable year is demonstrated by the caption of the Form 870-P(AD), which explicitly states that the settlement agreement is for "Coachella-85 Partners" and "Tax Year Ended: 1985," and by the follow up documents informing plaintiffs how the agreement affected their tax liability, which speak only of 1985 tax liability and do not mention C85 tax items of any other year, see Mot. [Doc. #25] Ex. 1, App. B at 13-19. Plaintiffs have not challenged the fact that the missing attached schedule referred solely to C85's 1985 partnership, but have attempted to meet their burden to show the Form 870-P(AD) agreement incorporated C85's 1995 partnership items by use of the July 30, 1997 facsimile.

the settlement agreement and cannot be used to alter, modify, or add to the terms of the settlement agreement contained in the Form 870-P(AD)." See Weiner, 255 F.Supp.2d at 655. In both Weiner and Kraemer, the courts rejected the United States' position, and concluded that the SAASO was not part of the Form 870-P(AD) settlement agreement.

Moreover, in this Court, plaintiffs' counsel also has resisted any alteration to the four corners of Form 870-P(AD) AMCOR settlement agreements. See Scuteri v. United States, Fed. Cl. 01-358T, Reply [Doc. #65] at 11-15. In Scuteri, the United States offered SAASOs and a corresponding declaration of Jerry Gossett to demonstrate how adjustments in Form 870-P(AD)s were calculated. See Scuteri, Fed. Cl. 01-358T, Resp. [Doc. #60] at 13-14; Resp. [Doc. #60] App. A at A3-A53, A60-A61, A69-A70. The Form 870-P(AD)s at issue in Scuteri are substantially similar to plaintiffs' Form 870-P(AD) settlement agreement at issue here. Compare Mot. [Doc. #25] Ex. 1, App. B at 10, 11 with Scuteri, Fed. Cl. 01-358T, Pl.'s App. B [Doc. #57] at 89, 91. Plaintiffs' counsel urged against looking beyond a Form 870-P(AD):

> Here, as in *Weiner* and *Kraemer*, the taxpayer's settlement offer consisted only of (sic?) unambiguous Form 870-P(AD) and the schedule of adjustments attached thereto. The Forms 870-P(AD) were the Scuteris' settlement offer; which the I.R.S. accepted. The government may not now change the settlement by adding additional terms not found within the four corners of the settlement documents, *i.e.* the Form 870-P(AD) and schedule of adjustments.

See Scuteri, Fed. Cl. 01-358T, Reply [Doc. #65] at 12 (footnotes omitted).[3]

---

[3] This quotation from the Scuteri briefs stands in stark contrast with the argument plaintiffs' counsel now advances:

> Although not attached to or included with the Form 870-P(AD) for 1985, the July 30th fax represents the IRS's express representation to allow the partners to reverse a portion of the §§ 447/448 partnership income and was made contemporaneously by the same Appeals Office that formulated the Form 870-P(AD) that the Dismores and hundreds of other AMCOR partners signed and returned. The partners, including the

What the prior litigation, and the SAASOs and the Jerry Gossett declaration filed by the United States in Scuteri, reveal is that, at one time, the IRS, including Jerry Gossett, mistakenly believed that, in addition to the terms explicitly contained in Form 870-P(AD)s, Form 870-P(AD) settlements with AMCOR partners like plaintiffs included other terms. Other such terms, set forth in the SAASOs, included that the IRS would not pursue penalties and would permit reduction of §§ 447/481 recapture income, and that the partners would pay tax motivated interest on tax underpayments resulting from disallowed partnership deductions. If, however, plaintiffs' counsel accepted the IRS' original, albeit mistaken, view of the AMCOR settlements, all such terms would be enforceable and plaintiffs' counsel's multiple claims for recovery of tax motivated interest on behalf of AMCOR partners, such as in Keener v. United States, Fed. Cl. No. 03-2028T and Smith v. United States, Fed. Cl. No. 04-907T, would have to be rejected. Plaintiffs' counsel simply can't have it both ways. While it is not surprising that plaintiffs' counsel would argue that extrinsic terms such as liability for tax motivated interest aren't enforceable since they were not explicitly written into the Forms 870-P(AD)s, they should not be heard to inconsistently argue here that we may look beyond Forms 870-P(AD)s to add other agreements.[4]

---

> Dismores, relied upon the IRS's §§ 447/481 representation in entering into the Form 870-P(AD)s.

Resp. [Doc. #28] at 6.

[4] The extrinsic terms plaintiffs' counsel ignores, and the July 30, 1997 facsimile they emphasize, are, in fact, linked. Operating under the mistaken view that the settlement with AMCOR partners includes terms beyond the Forms 870-P(AD), when Jerry Gossett advised in the facsimile that "partners who settled" may reduce some of the income they recaptured and reported in 1995 or 1996, he was referring to the prior SAASO and corresponding settlement documents. Plaintiffs' counsel is attempting to isolate the July 30, 1997 facsimile from its larger

In sum, the July 30, 1997 facsimile offered by plaintiffs is extrinsic evidence that cannot be used to add to the terms of plaintiffs' unambiguous July 17, 1997 Form 870-P(AD) settlement of C85's partnership items. The agreement simply does not encompass C85's 1995 partnership income. In addition, the facsimile post dates plaintiffs' settlement and therefore could in no way be treated as incorporated in it.[5]

## II. C85's 1995 partnership income was never converted to a non-partnership item, and the Court therefore may not adjust that income and plaintiffs' resulting distributive share.

Plaintiffs' second ground for opposing the motion to dismiss appears to be that their July 17, 1997 settlement of C85's 1985 partnership items automatically triggered, by operation of law, a reduction of C85's 1995 ordinary income (and correspondingly the distributive share plaintiffs reported on their 1995 return). Plaintiffs' legal theory is murky and unclear (see Resp. [Doc. #28] at 7-8), but appears to proceed as follows: 1) C85's 1995 income, in addition to being a

---

context, accepting only the parts now to their liking.

[5] Plaintiffs may also be arguing that Jerry Gossett's July 30, 1997 facsimile itself constitutes a valid binding contract between the IRS and plaintiffs to permit reversal of a portion of the C85 1995 partnership income plaintiffs reported on their 1995 return. Such an argument fails, because three essential elements for a binding agreement are missing. The facsimile is not an unambiguous offer of a contract, but merely expresses Gossett's view of the effect of a prior settlement ("partners who settled and are entitled to file claims for the 1995 ... year[]") and does not purport to offer a new contract. Second, plaintiffs can point to no express or tacit acceptance on their part of the supposed offer to reverse income. Indeed, their March 30, 1999 refund claim, see Mot. [Doc. #25] Ex.1, App. B, at 1-22/25?, explains plaintiffs' claim for a reduction in C85 1995 partnership income, but nowhere references the July 30, 1997 facsimile as a basis for it, see id. at 5. Third, the United States received no consideration for its purported generous offer to reverse C85 1995 income. Plaintiffs' entering into the Form 870-P(AD) for C85's 1985 partnership items cannot, as a matter of law, constitute consideration because that agreement was finalized on July 17, 1997 thirteen days before the July 30, 1997 facsimile was sent.

partnership item as defined in 26 U.S.C. § 6231(a)(3), was also an affected item as defined in 26 U.S.C. § 6231(a)(5) ("... any item to the extent such item is affected by a partnership item."), because the income merely recaptured partnership loss from C85's 1985 taxable year, and therefore must be considered affected by any adjustments to such loss; 2) the 1995 income indeed was affected by the partial disallowance of C85's 1985 partnership losses pursuant to the July 17, 1997 settlement, see Mot. [Doc. #25] at 4: when the settlement disallowed a portion of the loss that had already been recaptured and reported as income in 1995, it therefore must have triggered a corresponding reduction of C85's 1995 income (and plaintiffs' reported distributive share thereof); 3) the extent to which the settlement affected C85's 1995 income is determinable by a computational adjustment as defined in 26 U.S.C. § 6231(a)(6); and 4) accordingly, plaintiffs' 1997 settlement agreement must be deemed to reduce the 1995 income via its status as an affected item, and therefore, upon settlement, the income's dual status as a partnership item must have converted to a non-partnership item pursuant to 26 U.S.C. § 6231(b)(1)(C). Plaintiffs conclude that their alternative claim therefore concerns a non-partnership item and falls under Section § 6230(c) as a "claim ... that the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement....". 26 U.S.C. § 6230(c)(1)(B).

Plaintiffs' argument is misconceived, because C85's 1995 reported partnership income did not convert to a non-partnership item, and therefore is barred by 26 U.S.C. § 6230(c)(4) from being adjusted here. As an initial matter, it is indisputable that C85's 1995 partnership income and plaintiffs' distributive share thereof are partnership items as defined in 26 U.S.C. § 6231(a)(3). See 26 U.S.C. § 702; Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i) (1986).

Contrary to plaintiffs' contention, C85's 1995 partnership income did not convert to a non-partnership item as a result of plaintiffs' settlement of C85's 1985 partnership losses. Under 26 U.S.C. § 6231(b)(1)(C), only partnership items that are the subject of a settlement agreement convert. See id. ("... the partnership items of a partner ... shall become nonpartnership items as of the date– ... the Secretary or the Attorney General (or his delegate) enters into a settlement agreement with the partner with respect to such items....") (emphasis added). As seen supra, a term concerning C85's 1995 income was not included in plaintiffs' settlement agreement (and plaintiffs' argument here assumes that as true). In addition, even if C85's 1995 income were simultaneously both a partnership item and an affected item, affected items do not convert under 26 U.S.C. § 6231(b)(1)(C). Thus, C85's 1995 partnership income has always remained a partnership item. Accordingly, even if plaintiffs' claim for the income otherwise satisfies the requirements of 26 U.S.C. § 6230(c), 26 U.S.C. § 6230(c)(4) prohibits the Court from disturbing the treatment of Donald Dismore's distributive share of C85's 1995 income as reported on plaintiffs' 1995 return. This is because the income was reported on C85's 1995 partnership return and never disturbed - indeed, the reporting was sustained by the Tax Court's 2001 decision in *Coachella-85*.

In addition, holding that plaintiffs' Form 870-P(AD) settlement of C85's 1985 partnership items, although not including any term regarding C85's 1995 partnership income, nonetheless triggered an automatic settlement of the 1995 item would thwart the system Congress established for litigating partnership items. Congress has explicitly set forth avenues to adjust the reporting of partnership items on a partnership return. See generally 26 U.S.C. §§ 6221-6234. There are three primary avenues. The first is by a settlement of the partnership item. See

26 U.S.C. §§ 6224(c); 6231(b)(1)(C). As set forth supra, plaintiffs did not settle C85's 1995 income, and plaintiffs' second objection does not claim that they settled it as a partnership item, only as a derivative affected item. The second, initiated by the IRS, is by means of issuing to partners a notice of final partnership administrative adjustment, an FPAA, with respect to which one or more partners may then seek judicial review. See 26 U.S.C. §§ 6223, 6226. This procedure was not done with respect to C85's 1995 income. The third, initiated by one or more partners, is by means of the partner filing with the IRS a request for an administrative adjustment, with respect to which judicial review is also available. See 26 U.S.C. §§ 6227, 6228. This procedure was properly followed by the tax matters partner of C85, with the result that the Tax Court ruled there would be no adjustments to C85's 1995 income. See Mot. [Doc. #25] at 5. Indeed, the very reason the tax matters partner of C85 brought C85's 1995 income before the Tax Court was to protect against the situation where C85's 1985 losses, which were the subject of the FPAA avenue, would be disallowed, but 1995 income remain untouched. See Mot. [Doc. #25] Ex. 2 ¶ 9.

Plaintiffs now seek to have the court adjust, outside of any avenue established by Congress, C85's reported 1995 income on the grounds that it was an item affected by, even if not included in, the settlement of C85's 1985 partnership items. There is, however, no authority in the statutory scheme, and plaintiffs have cited none, for permitting this kind of backdoor adjustment to a reported partnership item. Permitting it would circumvent Congressional requirements, already perceived and followed by C85's tax matters partner, for the proper litigation of partnership items.

## III. Conclusion

For the foregoing reasons, the Dismores' §§447/481 alternative claim should be dismissed. Plaintiffs never settled the partnership item underlying the claim, and that item never converted to a non-partnership item. Therefore, the bars to litigating partnership items in a partner level refund suit, 26 U.S.C. § 7422(h) or 26 U.S.C. § 6230(c)(4), preclude the Court's jurisdiction over the claim.

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice, Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496
(202) 514-9440 (fax)

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Acting Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/Steven I. Frahm
Of Counsel

March 28, 2006