IN THE UNITED STATES COURT of FEDERAL CLAIMS

| | | |
|---|---|---|
| DONALD L. DISMORE and BETTYE G. DISMORE | § | |
| | § | |
| Plaintiffs, | § | CIVIL NO. 04-1787T |
| v. | § | |
| | § | Judge Allegra |
| | § | |
| UNITED STATES OF AMERICA | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO MOTION OF THE UNITED STATES FOR DISMISSAL OF PLAINTIFFS' §§447/481 ALTERNATIVE CLAIM AND BRIEF IN SUPPORT THEREOF

Pursuant to this Court's order dated June 12, 2006, this brief addresses the Plaintiffs' position regarding §6230(c)(1)(B) and §6231(a)(5) and their application to this case.

### I. Taxpayers' Statement of the Key Facts.

Petitioners' position is that their alternative claim for refund of a portion of the income reported in 1995 from Coachella-85 arises under I.R.C. §6230(c)(1)(B). Petitioners assert that the evidence will show, upon conclusion of discovery, that the key facts are as follows:

1. Petitioners entered into a settlement agreement with the IRS agreeing to adjust crop expenses of Coachella-85 for the 1985 tax year as an agreed adjustment to partnership items of a TEFRA partnership subject to I.R.C. §§6221-6231.
2. Coachella-85 realized income from the sale of the crops planted in 1985 in 1986. Due to a required change in the partnership's accounting method from cash to accrual, the income from 1986 was ratably included in income on the partnership's Forms 1065 over ten years, from 1986 through 1995.
3. As a direct result of the partial disallowance of the 1985 crop expenses, the income

recognized in each of the succeeding ten years beginning with 1986 should automatically have been reduced by one-tenth (1/10) of the portion of the 1985 crop expenses disallowed.

4. Petitioners' alternative claim for refund for 1995 is based on the portion of the deferred income reported in 1995 that became an overstatement of that income based upon the agreement to the partial disallowance of the 1985 crop expenses.

5. Petitioners did not file similar refund claims for 1986 through 1994 based on an understanding that the IRS would oppose such claims for 1986 through 1994 but would accept and process them for 1995 in accordance with information provided by the IRS appeals office.

## II. The Issue Before the Court.

The immediate issue before the Court is whether this Court has jurisdiction to hear Plaintiffs' alternative claim for refund. The merits of Plaintiffs' claim are therefore not the focus of this brief, but solely whether the Court has jurisdiction to rule on their claim if the above facts can be sustained. In considering a motion for summary judgment the facts are viewed in the light most favorable to the nonmoving party, here the plaintiffs, and all doubts are resolved against the movant, here the government.[1] Plaintiffs assert the Court does have jurisdiction under §6230(c)(1)(B).

---

1 *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1373 (Fed. Cir. 2005) citing Fed.R.Civ.P. 56(c) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also *Caterpillar, Inc. v. Deere & Co.*, 224 F.3d 1374, 1379 (Fed.Cir.2000) ("When ruling on a motion for summary judgment, all of the nonmovant's evidence is to be credited, and all justifiable inferences are to be drawn in the nonmovant's favor.").

## III. Analysis.

A. Application of §6230(c)(1)(B).

I.R.C. §6230(c) provides in pertinent part that:

> (c) CLAIMS ARISING OUT OF ERRONEOUS COMPUTATIONS, ETC.--
>
> (1) IN GENERAL.--A partner may file a claim for refund on the grounds that–
>
> . . . . . . . .
>
> (B) the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a), or....

There is very little legislative history regarding the TEFRA provisions. The House Committee Report offers little enlightenment, but does provide some indication of the intended scope.[2]

> **f.** ***Computational adjustments***
>
> *Computational adjustments*
>
> The procedure applicable to assessment of a deficiency will not apply to computational adjustments. Computational adjustments are changes in tax liability of a partner properly reflecting the treatment, under the rules adopted in the bill, of partnership items.
>
> . . . .
>
> *Claim by partner*
>
> A claim may be filed on the ground that there was an erroneous computation of the adjustment necessary (i) to make the partnership items on the partner's return consistent with the treatment of such items on the partnership return, or (ii) to apply to the partner a settlement, a FPAA, or a final court decision relating to the treatment of partnership items. A claim may also be based on a failure to allow a refund or credit in the proper amount. A claim based on an alleged erroneous computation must be filed within 6 months after the date of mailing the notice of computational adjustment to the partner. A claim based on a failure to allow a credit or make a refund in the proper amount must be filed within 2 years after, as appropriate, (i) the date the settlement was entered into, (ii) the date on which the period for bringing an action to review a FPAA expires, or (iii) the date a court decision becomes final.

---

[2] H.R. Conf. Rep. 97-760, 97th Cong., 2nd Sess. 1982, P.L. 97-248, Tax Equity and Fiscal Responsibility Act of 1982 (Aug. 17, 1982), 1982 U.S.C.C.A.N. 1190, 1982 WL 25049 (Leg.Hist.).

*Right to file suit*

> To the extent a claim based on failure to properly apply computational adjustments to the partner is not allowed, suit may be filed within the period prescribed in section 6532(a). In any claim or suit involving the application of computational adjustments to the partner, the treatment of partnership items on the partnership return, under the settlement, under the FPAA, or under the court decision (as appropriate) shall be conclusive.

House Committee Report, p. 607.

The Treasury Regulations offer no clarification. Temporary Treasury Regulation §301.6230(c)-1T relevant to the years at issue provided only that:

> **§301.6230(c)-1T. Claim arising out of erroneous computation. etc. (Temporary).--**A claim for refund under section 6230(c) shall state the grounds for the claim and shall be filed with the service center with which the partner's return is filed. [Temporary Reg. §301.6230(c)-1T.]

The obvious question then is has "the Secretary failed to...make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement..." Plaintiffs contend the answer is yes.

It is undisputed that the taxpayers entered into a binding settlement regarding adjustments to the crop expenses claimed by Coachella-85, a 1985 partnership item. Should the IRS have computed the resulting overpayment that occurred in 1995 as a computational adjustment and have made that refund? The answer should also be yes.

I.R.C. §6230(d)(5) specifically provides:

> (5) OVERPAYMENTS REFUNDED WITHOUT REQUIREMENT THAT PARTNER FILE CLAIM.--In the case of any overpayment by a partner which is attributable to a partnership item (*or an affected item*) and which may be refunded under this subchapter, to the extent practicable credit or refund of such overpayment shall be allowed or made without any requirement that the partner file a claim therefor.

[Emphasis added.]

It is Plaintiffs' position that overpayment and refund resulting from the reduction in 1995 deferred income from the 1986 crop sales is and should have been made as a direct computational adjustment resulting from an affected item associated with the 1985 crop expense partnership items:

I.R.C. §6231(a) defines "partnership items," "nonpartnership items," and "affected items."

> (3) PARTNERSHIP ITEM.--The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.
>
> (4) NONPARTNERSHIP ITEM.--The term "nonpartnership item" means an item which is (or is treated as) not a partnership item.
>
> (5) AFFECTED ITEM.--The term "affected item" means any item to the extent such item is affected by a partnership item.

Critical to the interpretation of this definition in (a)(5) of an "affected item" is that it refers to "*any* item...affected by a partnership item." [Emphasis added.] This language is used immediately after "partnership item" is defined in (a)(3) by a reference "any item" meeting certain restrictive criteria and after "nonpartnership item" is defined in (a)(4) as "an item" other than a partnership item. Thus "any item" as used in §(a)(5) must mean the entire universe of items from which "partnership items" are selected and the residual "nonpartnership items" are left behind. The meaning of "any item" in the definition of an affected item in (a)(5) means the same as used in the preceding subparagraph (a)(3) when defining "partnership items." Thus, an affected item may be either a partnership item or nonpartnership item.

It is a well settled "normal rule of statutory construction" that "identical words used in different parts of the same act are intended to have the same meaning."[3] Further, the Internal Revenue "Code

---

3 *Commissioner v. Keystone Consolidated Industries, Inc.*, 508 U.S. 152, 159, 113 S.Ct. 2006, 2011-12, 124 L.Ed.2d 71 (1993) *citing Sorenson v. Sec. of Treasury*, 475 U.S. 851, 860, 106 S.Ct.

must be given 'as great an internal symmetry and consistency as its words permit.'"[4]

The legislative history to this provision offers little or no enlightenment:

> The term 'partnership item' means any item required to be taken into account for the partnership's taxable year to the extent regulations provide that such item is more appropriately determined at the partnership level than the partner level. The term 'affected item' means any item to the extent it is affected by a partnership item.

House Committee Report, p. 609.

Temporary Treasury Regulation §301.6231(a)(5)-1T contains no clarification and addresses only when items on a taxpayer's return that are "unrelated to the items reflected on the partnership return" are included in the definition of an "affected item."

The above argument is based on technical rules of statutory construction. It is, however, logical and consistent with the concept of computational adjustments of the liability (or overpayment) resulting from an agreed or determined adjustment to a partnership item. This can clearly be seen by considering a hypothetical.

Assume a piece of depreciable equipment is purchased by a partnership and there is an agreement that the cost basis of the equipment was overstated. The tax consequence of that would have to be to make a proportionate reduction in the depreciation claimed by the partnership in each year, as well as potentially a reduction in any investment tax credit claimed and any gain or loss on

---

1600, 1606, 89 L.Ed.2d 855 (1986) and *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.Ed. 1204 (1932). See also *Reno v. Bossier Parish School Bd.*, 528 U.S. 320, 329-30, 120 S.Ct. 866, 872, 145 L.Ed.2d 845 (2000) ("[W]e refuse to adopt a construction that would attribute different meanings to the same phrase in the same sentence, depending on which object it is modifying. See *Bankamerica Corp. v. United States*, 462 U.S. 122, 129, 103 S.Ct. 2266, 76 L.Ed.2d 456 (1983) (declining to give different meanings to the phrase "other than" when it modified "banks" and "common carriers" in the same clause).").

[4] *Keystone*, quoting *Commissioner v. Lester*, 366 U.S. 299, 304, 81 S.ct. 1343, 1346, 6 L.Ed.2d 306 (1961).

sale of the asset. Each of these other partnership items are clearly other "items" affected by the agreed change in cost basis. As adjustments to affected items requiring no further partner level determinations, the resulting tax liability for each partner should be computed and assessed as a computational adjustment.

Just as such resulting deficiencies should be assessable by the IRS, the resulting overpayments had the determination been that the cost basis had been understated should be determinable and refundable pursuant to I.R.C. §6230(c)(1)(B) and §6230(d)(5).

The same logic and legal analysis applies in the case at bar.

The importance of the "affected item" concept occurs also regarding the very definition of a computational adjustment. I.R.C. §6231(a)(6) defines a "computational adjustment" as:

> (6) COMPUTATIONAL ADJUSTMENT.--The term "computational adjustment" means the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item. All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments.

The regulations clarify this and provide in pertinent part that:

> **§301.6231(a)(6)-1T. Computational adjustments (Temporary).** (a) *In general.* A change in the tax liability of a partner to properly reflect the treatment of a partnership item under subchapter C of chapter 63 of the Code is made through a computational adjustment. *A computational adjustment may include a change in tax liability that reflects a change in an affected item where that change is necessary to properly reflect the treatment of a partnership item.*

[Emphasis added.]

The income realized on the 1986 crop sales is directly reduced by the portion of the 1985 crop expenses disallowed in the settlement. That reduction in income and the resulting overpayment and refund in the income years should have been computed as a computational adjustment resulting from a change to an affected item directly linked to the 1985 partnership item settlement and refunded

under §6230(d)(5), for which this alternative claim for refund arises under §6230(c)(1)(B). Whether or not similar claims might have been proper for 1986 through 1994 is not before this Court because such claims were not filed by the Plaintiffs in reliance on their understanding of the IRS Appeals Office position, whether or not it was technically enforceable.

Plaintiffs neither could nor should have raised their claim in a partnership level TEFRA proceeding for the 1995 year and any decision cannot and should not affect the Plaintiffs' treatment of the 1995 deferred income.

If this Court accepts the argument that a partnership item can have a dual role as both a partnership item and as an affected item, affect by a change to a different partnership item, then the following analysis applies.

I.R.C. §6231(b) provides in pertinent part:

> (b) ITEMS CEASE TO BE PARTNERSHIP ITEMS IN CERTAIN CASES.--
> (1) IN GENERAL.–For purposes of this subchapter, the partnership items of a partner for a partnership taxable year shall become nonpartnership items as of the date–
> . . . .
> (C) The Secretary or the Attorney General (or his delegate) enters into a settlement agreement with the partner with respect to such items, or....

The question then is, does a settlement of an adjustment to one partnership item that affects a different partnership item as an affected item also convert the affected partnership item to a nonpartnership item? Certainly it would seem that a partnership item settlement is a settlement "with respect to" that specific partnership item and any affected items that are also partnership items.

Again, this is consistent with the general intent and purpose of TEFRA which was well summarized in *Roberts v. Commissioner*, 94 T.C. 853, 859-60 (1990):

> Congress enacted TEFRA to provide a method of uniformly adjusting items of partnership income, loss, deduction, or credit that affect each partner. With regard to partnership items, Congress decided that a partner's tax liability should no longer be

determined on a partner-by-partner basis. Instead, 'the tax treatment of any partnership item [would] be determined at the partnership level.' *Maxwell v. Commissioner*, 87 T.C. 783, 787 (1986). The purpose behind the enactment of section 6221 *et seq.* was to have one proceeding to determine all of the partnerships [sic] items with respect to a partnership. **All of the partners would be eligible participants in such a proceeding, and the results of that proceeding would then be automatically applied to each of the partner's returns without the necessity of further deficiency procedures.**

[Emphasis added.]

Consider a 1995 TEFRA proceeding for Coachella-85. Clearly the deferred income reported by the partnership from 1985 is a partnership item for any partners who, unlike the Plaintiffs, had not entered into 1985 individual settlements. Had the final Tax Court case for 1985 that was pending when the Plaintiffs entered into the 1985 settlement resulted in full disallowance of the 1985 crop expenses, then the appropriate 1995 partnership item adjustment for the unsettled partners would have been complete reversal of the 1995 deferred income. If such a determination were applicable to Plaintiffs, that would be inconsistent with the individual settlement entered into by Plaintiffs for 1985, which justified only a partial reversal as set out in their refund claim. Similarly, Plaintiffs could not rationally assert that the partnership level adjustment in the Tax Court to the 1995 income should be based on their individual 1985 settlement. The only interpretation that works under TEFRA is that the 1995 partnership item that is an affected item with regard to the 1985 settlement is also converted to a nonpartnership item as to Plaintiffs due to the 1985 settlement.

It is also consistent with I.R.C. §§6226(d) and (f) which provides in pertinent part that:

(d) PARTNER MUST HAVE INTEREST IN OUTCOME.--

(1) IN ORDER TO BE PARTY TO ACTION.--Subsection (c) shall not apply to a partner after the day on which–

(A) the partnership items of such partner for the partnership taxable year became nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231, or....

. . . .

(f) SCOPE OF JUDICIAL REVIEW.--A court with which a petition is filed in

> accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment rates, the proper allocation of such items among the partners,....

The Tax Court neither should have considered the effect of the Plaintiffs' 1985 personal settlement on the portion of the 1995 deferred income the partnership should recognize, nor when properly interpreted could it have if the 1995 deferred income was converted to a nonpartnership item as to the Plaintiffs due to its status as an affected item related to the Plaintiffs' 1985 partnership item agreed settlement.

**CONCLUSION**

For all of the reasons set forth above and in Plaintiffs' Response to Motion of the United States for Dismissal of Plaintiffs' §§447/481 Alternative Claim and Brief in Support Thereof this Court should determine it has jurisdiction to consider Plaintiffs' alternative claim for refund based on the partial nonrecognition of their share of the 1995 deferred income.

Plaintiffs also call to the Court's attention that they have simultaneously filed with the Court a motion for leave to amend their complaint to withdraw the count constituting the alternative claim for refund. After review, it is Plaintiffs' conclusion that this issue is so complex and of so little value in this case that it would be more appropriate to withdraw the alternative claim, rendering the jurisdictional question moot and allowing the case on the primary claim to proceed more expeditiously.

Respectfully,

/s/ Teresa J. Womack

Teresa J. Womack
Texas State Bar No. 00788707
Redding & Associates, P.C.
2419 W. T.C. Jester
Houston, Texas 77018
713-965-9244
713-621-5227 (Fax)
**Counsel for Donald L. Dismore and Bettye G. Dismore**

Of Counsel for Plaintiffs:
Thomas E. Redding
Texas State Bar No. 166613000
Sallie W. Gladney
Texas State Bar No. 00787546
Redding & Associates, P.C.
2914 W. T.C. Jester
Houston, Texas 77018
(713) 965-9244
(713) 621-5227 (Fax)