No. 04-1787 T
(Judge Francis M. Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DONALD L. DISMORE and BETTYE G. DISMORE,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# MOTION OF THE UNITED STATES FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
STEVEN I. FRAHM
BART D. JEFFRESS
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6496

PAGE

## TABLE OF CONTENTS

Motion of the United States for summary judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Brief for the United States in support of its motion for summary judgment . . . . . . . . . . . . . . . . . . 3

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III. Argument:

A. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B. A partner's basis in a partnership interest is decreased by the partner's distributive share of partnership loss and expenditure, even if not deductible by the partner . . . . . . . . . . . . 11

1. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
2 Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

C. Plaintiffs' loss claim on the partnership interest depends on whether the partnership's activities were shams or were entered into with a profit motive; these are partnership level issues which may not be litigated in this partner level proceeding . . . . . . . . . . 15

1. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
2. Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Appendix A (under separate cover):
Title 26, U.S.C.:[1]
§ 165(a), (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
§ 705(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
§ 722 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§ 6221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§ 6226(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

[1] Unless otherwise noted, statutory provisions set forth in Appendix A appear as in effect during the relevant period and not necessarily as currently codified.

**PAGE**

§ 6230(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 6231(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 7422(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Appendix B (under separate cover):

| Exhibit | Description |
|---|---|
| 1 | Plaintiff's Response to United States' Requests for Admissions and Response to Document Production . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-1 |
| 2 | Certified Copy of Notice of Election to Participate . . . . . . . . . . . . . . . . B-6 |
| 3 | IRS Certificate of Assessments, Payments, and Other Specified Matters for Donald L. and Bettye G. Dismore's tax year 1995 . . . . . . . . . . . . B-12 |
| 4 | Certified Copy of Decision in *Coachella-85* . . . . . . . . . . . . . . . . . . . . B-16 |

**Page**

## TABLE OF AUTHORITIES

**Cases:**

*Allen v. Commissioner*, 1988 WL 34867, 55 T.C.M. (CCH) 641 (1988) . . . . . . . . . . . . 14

*Andros v. Commissioner*, T.C. Memo. 1996-133, 1996 WL 116377 (1996) . . . . . . 19, 21

*Baylin v. United States*, 43 F.3d 1451 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Blodgett v. Commissioner*, 394 F.3d 1030 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Brannen v. Commissioner*, 722 F.2d 695 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . 21

*Brown v. United States*, 396 F.2d 459 (Ct. Cl. 1968) . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Cannon v. Commissioner*, 949 F.2d 345 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 21

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Coltec Indus., Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006) . . . . . . . . . . . . 19, 20

*Evans v. Commissioner*, 908 F.2d 369 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hildebrand v. Commissioner*, 28 F.3d 1024 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 21

*Hill v. Commissioner*, 204 F.3d 1214 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Illes v. Commissioner*, 982 F.2d 163 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Indopco, Inc. v. Commissioner*, 503 U.S. 79 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Interex, Inc. v. Commissioner*, 321 F.3d 55 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 18

*Knetsch v. United States*, 348 F.2d 932 (Ct. Cl. 1965) . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Long Term Capital Holdings v. United States*, 330 F. Supp. 2d 122 (D. Conn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Page**

**Cases (continued):**

*Marinovich v. Commissioner*, T.C. Memo. 1999-179, 1999 WL 339316 . . . . . . . . 19, 21

*Omerza v. Commissioner*, T.C. Memo. 1992-206, 1992 WL 67401 . . . . . . . . . . . . . . . . 19

*Prochorenko v. United States*, 243 F.3d 1359 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . 22

*River City Ranches # 1 LTD. v. Commissioner*, 401 F.3d 1136 (9th Cir. 2005) . . . . . . . 21

*Tallal v. Commissioner*, 778 F.2d 275 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . 21

*Weiner v. United States*, 389 F.3d 152 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wolf v. Commissioner*, 4 F.3d 709 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Wright v. Commissioner*, T.C. Memo. 1994-288, 1994 WL 276907 . . . . . . . . . . . . 19, 21

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):[2]

§ 165 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12, 14, 16-22
§ 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
§ 705 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12, 15
§ 733 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
§ 742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
§ 6221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
§ 6226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
§ 6230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
§ 6231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21
§ 7422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
§ 7491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Internal Revenue Service Restructuring and Reform Act of 1998,
Pub. L. No. 105-206, 112 Stat. 685 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

---

[2] References herein to sections (or "§") are to the Internal Revenue Code, codified in Title 26 of the United States Code, as amended and in effect during the relevant period.

**Page**

**Miscellaneous:**

Arthur B. Willis, John S. Pennell & Philip F. Postlewaite,
*Partnership Taxation*, ¶ 5.02[4] (6th ed. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

H.R. Rep. No. 83-1337 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

S. Rep. No. 83-1622 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

H.R. Conf. Rep. No. 105-599 (1998), *reprinted in* 1998-3 C.B. 747, 996 . . . . . . . . . . . 18

James S. Eustice & Joel D. Kuntz, Federal Income Taxation of S Corporation,
¶¶ 9.03[2][a], 9.03[2][b] (4th ed. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rev. Rul. 96-10, 1996-1 C.B. 138 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rev. Rul. 93-80, 1993-2 C.B. 239 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rev. Rul. 89-7, 1989-1 C.B. 178 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Rules of the Court of Federal Claims, 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

Treasury Regulations (26 C.F.R):

§ 1.705-1(a)(3) (1985) (same in 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13
§ 301.6231 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

William S. McKee, William F. Nelson & Robert L. Whitmire,
*Federal Taxation of Partnerships and Partners*, ¶ 6.02[2] (3rd ed. 1997) . . . . . . 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 04-1787 T

Judge Francis M. Allegra

DONALD L. DISMORE and BETTYE G. DISMORE,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

MOTION OF THE UNITED STATES FOR SUMMARY JUDGMENT

Pursuant to RCFC 56(b), defendant, the United States, respectfully moves the Court for summary judgment as to plaintiffs' remaining claim on the ground that there is no genuine issue of material fact and that defendant is entitled to judgment as a matter of law. In support of its motion, defendant relies upon its brief and proposed findings of uncontroverted fact, and the materials cited therein.

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496

(202) 514-9440 (fax)

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/Steven I. Frahm
Of Counsel

March 30, 2007

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 04-1787 T

Judge Francis M. Allegra

---

DONALD L. DISMORE and BETTYE G. DISMORE,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

BRIEF FOR THE UNITED STATES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

---

**INTRODUCTION**

Plaintiffs seek a refund of federal income tax paid for their 1995 taxable year. Plaintiff Donald Dismore owned a partnership interest in Coachella-85 Partners from 1985 through 1995. Plaintiffs contend that he sustained a deductible loss when the partnership allegedly terminated in 1995. The loss, plaintiffs allege, equals the "basis" remaining in the partnership interest upon termination. The issue in this refund case centers on the basis calculation and the amount of the claimed loss.

A partner's basis in a partnership interest is calculated pursuant to statutes and regulations, as elaborated more thoroughly below. Generally, when one becomes a partner, one's starting basis equals any initial cash contribution. As the partnership's activities proceed, a partner's starting basis is increased by one's share of partnership income or liabilities, and is

decreased by one's share of partnership loss or expense.

In 1985, Coachella-85 Partners reported a partnership loss (primarily farming expenses) and allocated a share of that loss to Donald Dismore. Plaintiffs used the allocated share of 1985 loss to reduce their 1985 taxable income, and Dismore claims he subtracted the share from his basis. In 1997, the Internal Revenue Service and plaintiffs entered into a settlement agreement under which a portion of the 1985 allocated loss was disallowed. Because Donald Dismore allegedly had subtracted the disallowed portion of the loss from his basis, plaintiffs theorize the settlement agreement effected a restoration of basis in his partnership interest equal to the disallowance. It is this claimed restored basis that plaintiffs contend was lost in 1995, when Coachella-85 Partners allegedly terminated.

Because plaintiffs' restored basis/termination claim arises in the context of a partnership, certain statutes and regulations regarding the litigation of partnership items apply. Those rules require that partnership items be litigated in partnership proceedings, and bar their litigation in partner proceedings. This case is a partner proceeding. Accordingly, plaintiffs may not litigate any partnership items necessary to prove their claimed loss.

In light of the foregoing introduction, the questions presented by this motion are:

1. In computing basis of a partnership interest, whether I.R.C. § 705(a)(3) and Treas. Reg. § 1.705-1(a)(3) (1985) require that basis is reduced by a partner's share of partnership loss/expense, even if the loss/expense is disallowed and therefore not deductible?

2. Since essential elements of plaintiffs' claim are the economic substance of partnership transactions and partnership profit motive – both of which are

partnership items and may only be litigated in partnership proceedings – are plaintiffs in this partner level proceeding unable to meet their burden of proof?

## I. Statement of the Case

Plaintiff Donald L. Dismore was a limited partner in Coachella-85 Partners ("C85"), a California limited partnership, from 1985 through 1995. *See Am. Compl*. [Doc. #42] ¶ 6; *see also Ex. 1, App. B* [Doc. #25] at 9-20, 28. For the taxable period ending on December 31, 1985, C85 reported ordinary losses (resulting primarily from farming expenses), of which Donald Dismore's share was $77,985. *See Ex. 1, App. B* [Doc. #25] at 10, 13-14, 19; *Exs. 1-2, App.* [Doc. #36] at 18-19, 23; *Ex. 1, App. B* at B-1 ¶¶ 2, 4. Plaintiffs reported their share of the loss deductions on their 1985 individual income tax return and used it to reduce their 1985 taxable income. *See Ex. 1, App. B* [Doc. #25] at 10, 13-14, 19; *Ex. 1, App. B* at B-1 ¶¶ 2, 4.

On April 10, 1991, the Internal Revenue Service ("IRS") issued a notice of final partnership administrative adjustment ("FPAA") to C85. *See Ex. 1, App.* [Doc. #36] at 14-21. The FPAA reflected the IRS's determinations of adjustments to the reporting of partnership items on C85's 1985 partnership return. *See id.* at 15. Among other things, the IRS determined that approximately $9.1 million of ordinary loss deductions claimed by C85 (approximately $8.9 million of which were claimed as schedule F farming expenses) were not allowable, and adjusted the deductions downward to zero. *See id.* at 18-19. In addition to other reasons, the IRS determined the deductions were not allowable, because "[t]he partnership's activities constitute a series of sham transactions" and "[t]he partnership's activities lack economic substance." *Id.* at 19.

On July 10, 1991, a notice partner of C85 filed a petition in the United States Tax Court, contesting the adjustments reflected in the FPAA, *Coachella-85 Partners, Daniel F. Vreeland, A Partner Other Than the Tax Matters Partner, Petitioner, v. Commissioner of Internal Revenue, Respondent*, Docket No. 15057-91, ("*Coachella-85*"). *See Ex. 1, App.* [Doc. #36] at 1-21. The petition raised numerous challenges to the FPAA adjustments, including that the IRS erred in determining that the partnership's activities constituted a series of sham transactions and lacked economic substance. *See id.* at 6-7. By statute, § 6226(c), Donald Dismore was a party to *Coachella-85*. On August 19, 1991, he elected, pursuant to § 6226(c)(2), to participate in the proceeding. *See Ex. 2, App. B* at B-6-B-11.

While *Coachella-85* was proceeding in the Tax Court, the IRS and the Dismores entered into a settlement agreement with respect to some of the FPAA determinations of the partnership items of C85 for 1985. *See Ex. 1, App. B* [Doc. #25] at 10; *Ex. 2, App.* [Doc. #36] at 23; *Ex. 1, App. B* at B-1 ¶¶ 2, 4. The agreement became effective on July 17, 1997, when accepted and counter-signed by the IRS. *See id.* The settlement specifies agreed amounts of certain of C85's 1985 partnership items. *See id.* For example, in place of the disallowance in the FPAA of approximately $9.1 million in claimed farming expenses and other deductions, the settlement disallowed only approximately $3.7 million and contemplated the attendant adjustment to Donald Dismore's allocable share. *See Exs. 1-2, App.* [Doc. #36] at 18-19, 23; *Ex. 1, App. B* at B-1 ¶¶ 2, 4. The agreement does not specify the reason for the agreed adjustments. *See Ex. 1, App. B* [Doc. #25] at 10; *Ex. 2, App.* [Doc. #36] at 23; *Ex. 1, App. B* at B-1 ¶¶ 2, 4.

The settlement was partial. The IRS and plaintiffs did not reach agreement on several of the partnership item determinations in the FPAA that were being contested in *Coachella-85*. For

example, the agreement did not specify whether the partnership's activities were shams and lacked economic substance. *Compare Ex. 1, App.* [Doc. #36] at 1-21 *with Ex. 1, App. B* [Doc. #25] at 10; *Ex. 2, App.* [Doc. #36] at 23; *Ex. 1, App. B* at B-1 ¶¶ 2, 4; *see also Weiner v. United States*, 389 F.3d 152, 156 n.2 (5th Cir. 2004).

Approximately six months after plaintiffs' July 17, 1997 settlement, on January 20, 1998, the IRS mailed plaintiffs a notice of computational adjustment, showing how application of the partial settlement affected their 1985 tax return. *See Ex. 1, App. B.* [Doc. #25] at 13-19. Application resulted in the disallowance of $31,890 of the $77,985 that plaintiffs had reported as Donald Dismore's share of C85's 1985 farming expense and other loss deductions. *See Ex. 1, App. B* [Doc. #25] at 9-19; *Ex. 1, App. B.* at B-1 ¶¶ 2, 4. The notice explained that, as a result of the settlement, $31,890 of the reported partnership losses were disallowed and attributable to tax motivated transactions, such that the resulting tax underpayment of $15,945 was subject to interest at the tax motivated rate, and that such interest computed to February 14, 1998 totaled $43,719.34 (comprised of regular interest of $31,941.37 and tax motivated interest of $11,777.97). *See Ex. 1, App. B.* [Doc. #25] at 13-19. A corresponding assessment followed soon after in March 1998. *See id.* at 20.

Plaintiffs filed a joint federal income tax return for calendar year 1995 on October 17, 1996, and paid the taxes reported due on that return. *See Am. Compl.* [Doc. #42] ¶ 5; *Answer* [Doc. #10] ¶ 5; *Ex. 3, App. B* at B-13-B-14. Plaintiffs reported $195,117 in adjusted gross income, $131,187 in taxable income, and $6,521 in self employment tax. *See Ex. 3, App. B* at B-13. Payment included with the return covered remaining tax liability, an estimated tax penalty, interest, and a failure to pay penalty, and a small refund issued. *See id.* at B-13-B-14.

On March 30, 1999, plaintiffs mailed a claim for refund for their 1995 taxable year to the IRS - the claim was received two days later. *See Ex. 1, App. B* [Doc. #25] at 1-20, 28.[3] In their refund claim, plaintiffs contended that the partial disallowance of their 1985 partnership losses, pursuant to their 1997 settlement agreement, effected a restoration of Donald Dismore's basis in C85. *See Ex. 1, App. B* [Doc. #25] at 5.[4] Implicit in their contention is the additional claim that Donald Dismore previously reduced his basis in his partnership interest by his share of C85's 1985 loss. That is, without a prior reduction, there is nothing to restore. The amount of the restoration, according to plaintiffs, equals the amount of the disallowance, $31,890. *See id.* Plaintiffs claim that Donald Dismore's basis after restoration was $31,890, up from his "ending basis" of zero at the end of 1995. *See id.* Plaintiffs argue they lost $31,890 – the claimed restored basis – when the C85 partnership allegedly terminated in 1995. *See id.*[5]

After plaintiffs and the IRS entered into the settlement agreement, and while plaintiffs' refund claim was pending with the IRS, the Tax Court issued a decision in *Coachella-85* on July 19, 2001. The decision confirmed the FPAA determination that disallowed partnership deductions were attributable to sham partnership transactions:

> Pursuant to Rule 248(b) of the Tax Court's Rules of Practice and Procedure and

---

[3] Exhibit 1 was provided to the United States by plaintiffs' counsel. It is not clear what pages following page 21 of the exhibit were included with plaintiffs' refund claim.

[4] Plaintiffs restate the administrative claim in this proceeding. *Compare Ex. 1, App. B* [Doc. #25] at 5-6 *with Am. Compl.* [Doc. #42] ¶ 10.

[5] Although not explicit, plaintiffs' refund claim assumes the alleged restoration as of 1985 (since plaintiffs' settlement agreement was reached in 1997 and the termination of C85 is alleged to have occurred in 1995).

Plaintiffs also claim that they did not report on their 1995 tax return the loss for which they seek a refund in this litigation. *See Am. Compl.* [Doc. #42] ¶ 10.

Respondent's Motion for Entry of Decision, it is

ORDERED and DECIDED: That the following statement shows the adjustments to adjustments to the partnership items of Coachella-85 Partners for the taxable year 1985, as set forth below:

**1985 Year**

**ADJUSTMENTS TO ORDINARY INCOME:**

| Partnership Item | As Reported | As Determined |
|---|---|---|
| Farming Expense Schedule F | $8,928,385.00 | $4,655,383.00 |

. . .

That the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting;

*See Ex. 4, App. B* at B-17-B-18.

On December 18, 2002, the IRS disallowed plaintiffs' March 1999 refund claim. The disallowance letter stated:

> You have requested a deduction for an ordinary loss equal to your remaining basis in an AMCOR partnership. This treatment is based on abandonment or termination of that partnership interest. Internal Revenue Code section 165 governs these types of losses and states they are limited to losses incurred in a trade or business, incurred in a transaction entered into to for profit or losses arising from fire . . . or other casualty or theft. The various AMCOR partnerships were shams and had no economic substance. Thus, no loss is allowed under IRC section 165. The determination of profit motive is a partnership item determined at the partnership level.
>
> A determination was made that allows for the capital treatment of these losses. You may send a new claim to the address shown on this letter. Please label your claim(s) as "AMCOR claim" including a copy of the audit report and the tax return(s) for the year(s) of the claim(s).

*See Ex. 1, App. B* [Doc. #25] at 28.

On December 20, 2004, the Dismores filed the present suit.

## II. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c). Where, as here, the non-moving party bears the burden of proof at trial, the moving party is only required to identify the portions of the judicial or discovery record together with affidavits that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

## III. Argument

### A. Introduction

Plaintiffs seek a tax refund for their 1995 taxable year. Their refund claim has two parts. First, plaintiffs claim a restoration of basis in a partnership interest equal to disallowance of partnership loss/expense. Second, plaintiffs contend the restored basis (i.e. the partnership interest) was lost when the partnership allegedly terminated, and therefore gave rise to a loss deduction in the termination year, allegedly 1995. For the second part, plaintiffs rely on Rev. Rul. 93-80, 1993-2 C.B. 239. That ruling discusses whether the abandonment or worthlessness of a partnership interest gives rise to a loss deductible pursuant to § 165(a), and, if so, whether such loss is a capital loss or an ordinary one.

This motion addresses two grounds, which, as a matter of law, demonstrate that plaintiffs are not entitled to a loss deduction under § 165(a). First, there is no authority to support plaintiffs' claim for the restoration of basis. Instead, the law requires a partner's basis in a partnership interest be reduced by partnership loss or expense, without regard to the deductibility of such loss or expense. Second, plaintiffs will have a failure of proof under § 165(a), (c)(2). Those provisions require a showing that plaintiffs invested in partnership transactions having economic substance and that the partnership had a profit motive for entering the transactions. Plaintiffs, however, can not make the required showing, because they are not permitted in this partner level proceeding to offer proof of the nature of their partnership transactions and partnership profit motive (which proof, in any event, would be contrary to the Tax Court's decision).

### B. A partner's basis in a partnership interest is decreased by the partner's distributive share of partnership loss and expenditure, even if not deductible by the partner.

#### 1. Introduction

Plaintiffs argue that Donald Dismore's basis in his partnership interest should be restored as a result of their settlement of partnership loss deductions. Pursuant to the settlement, a portion of the partnership loss plaintiffs reported on their 1985 tax return ($31,890 of $77,985) was disallowed. They contend the basis should increase in an amount equal to the agreed partial loss disallowance. Because the losses were allegedly subtracted from basis, plaintiffs reason that their disallowance should have the opposite effect, that they should be added back. Plaintiffs further claim that the restored basis was lost when the partnership allegedly terminated, thereby

generating a § 165 loss. Thus, the restoration plaintiffs seek is prerequisite to their claimed deduction. Without the restoration, there can be no loss of the restored basis.

But common sense suggests that plaintiffs should not be able to convert their disallowed partnership loss deductions, via a basis restoration mechanism, into equal offsetting § 165 loss deductions. Indeed, Congress crafted the mechanical rules by which a partner's basis is calculated to stop just such an end run. Those rules require subtraction of a partner's distributive share of partnership losses and expenditures from basis, even if the partner gains no tax benefit from them, for example, because they are not deductible. Because subtraction of disallowed partnership loss is required, plaintiffs may not add it back to Donald Dismore's basis.

**2. Argument**

As a general matter, a partner's basis in a partnership interest is determined pursuant to § 705(a). When a partner obtains a partnership interest in exchange for cash, the partner's initial basis in the interest is the amount contributed. *See* §§ 705(a), 722.[6] Section 705(a)(1) provides that a partner's basis is increased by the sum of the partner's distributive share of both the partnership's taxable income and the partnership's tax exempt income. Section 705(a)(2) provides that a partner's basis is decreased (but not below zero) 1) by partnership distributions (generally the amount of any money and the amount of the basis of property other than money distributed to the partner, *see* § 733) and 2) by the sum of the partner's distributive share of partnership losses and of partnership expenditures that are not deductible in computing the

---

[6] Section 742 governs initial basis where a partner acquires an interest via transfer.

partnership's taxable income and not properly chargeable to capital account.[7]

These rules protect both the taxpayer and the Government, by preventing, on the one hand, double taxation and, and on the other, inappropriate tax benefits. For example, a partner is taxed on the partner's distributive share of partnership income. A corresponding increase in the partner's basis is necessary to prevent double taxation of the same income upon the subsequent sale of the partnership interest. Similarly, a partner may use the partner's distributive share of partnership loss to reduce the partner's taxable income. A corresponding decrease in the partner's basis is necessary to prevent a second benefit from the same loss when the partner sells the partnership interest.

The same principle applies to a disallowed loss. A partner is not permitted to use the partner's distributive share of disallowed partnership loss to reduce the partner's taxable income. To prevent the partner from converting the disallowed loss into a tax benefit upon the sale or other disposition of the partnership interest, a decrease in the partner's basis to the extent of the disallowed loss is necessary. The requirement to reduce basis by a partner's distributive share of partnership loss and expenditures, even if not deductible, ensures that a partner can not offset the disallowed loss deduction or nondeductible expenditure with an equal loss simply by disposing of

---

[7] *See also Treas. Reg.* § 1.705-1(a)(3) (1985) (same in 1995):

(3) The basis shall be decreased (but not below zero) by distributions from the partnership as provided in section 733 and by the sum of the partner's distributive share for the taxable year and prior taxable years of —

(i) Partnership losses (including capital losses), and

(ii) Partnership expenditures which are not deductible in computing partnership taxable income or loss and which are not capital expenditures.

a partnership interest.[8]

Accordingly, the concept of basis restoration is indeed an important legal issue. If restoration were permitted, a taxpayer could nullify any loss disallowance or loss disallowance provision, simply by using the partnership form. Should a particular loss disallowance rule or a judicial doctrine, such as economic substance, limit or disallow a partner's deduction of a distributive share of partnership loss, the partner need only add the disallowed deduction back into basis and abandon the partnership interest. Presto! A disallowance would magically be metamorphosed into an ordinary loss deduction. This is exactly the type of alchemy plaintiffs here attempt - to convert the very losses they agreed to have disallowed into § 165(a) losses:

The partnership, C85, reported millions in ordinary loss deductions (primarily schedule F farming expenses), of which Donald Dismore's distributive share was $77,985. Plaintiffs reported the losses on their tax return and thereby reduced their 1985 taxable income. By deducting the entire share, plaintiffs implicitly claimed that Donald Dismore's basis in his partnership interest decreased by an equal amount ($77,985). *See* § 704(d) (partner's distributive

---

[8] Regarding partnership losses, see Arthur B. Willis, John S. Pennell, & Philip F. Postlewaite, *Partnership Taxation*, ¶ 5.02[4], 5-11 and n. 38 (6th ed. 2006) ("The basis of a partnership interest is reduced by the partner's distributive share of partnership losses even if the partner receives no tax benefit from such losses."); *Allen v. Commissioner*, 1988 WL 34867, 55 T.C.M. (CCH) 641, 647 and n.26 (1988); William S. McKee, William F. Nelson, & Robert L. Whitmire, *Federal Taxation of Partnerships and Partners*, ¶ 6.02[2], 6-7 (3rd ed. 1997).

Regarding nondeductible expenditures, see H.R. Rep. No. 1337, 83d Cong., 2d Sess. A225 (1954); S. Rep. No. 1622, 83d Cong., 2d Sess. 384 (1954); Rev. Rul. 96-10, 1996-1 C.B. 138 (partner's basis in partnership interest is decreased (but not below zero) by partner's share of loss upon sale of partnership property, even though loss is disallowed); Rev. Rul. 89-7, 1989-1 C.B. 178; McKee, Nelson, & Whitmire, *Federal Taxation of Partnerships and Partners*, ¶ 6.02[3][c], 6-12-6-13; Willis, Pennell, & Postlewaite, *Partnership Taxation*, ¶ 5.02[4], 5-12.

For discussion of similar rules for calculating the basis of a shareholder in a S Corporation, see James S. Eustice & Joel D. Kuntz, *Federal Income Taxation of S Corporations*, ¶¶ 9.03[2][a], 9-20, 9.03[2][b], 9-21 (4th ed. 2001).

share of partnership loss allowed only to extent of partner's basis in partnership interest). Over a decade later, after the IRS adjusted the partnership's return and litigation over the adjustments commenced, plaintiffs agreed to a partial disallowance, $31,890, of their reported deductions. But plaintiffs now, in effect, seek to rescind their agreement, by adding the $31,890 disallowance back to basis and claiming a loss of the restored basis upon the alleged termination of the partnership.

Congress crafted the basis calculation rules of § 705(a) to prevent this very result, by providing that a partner's basis is reduced by partnership losses or nondeductible expenditures without regard to their deductibility. The partnership's ordinary loss deductions decreased Donald Dismore's basis, either because they constituted his distributive share of partnership loss, or his distributive share of a partnership expenditure that is not deductible in computing partnership taxable income or loss, or both. His basis can not be restored because a deduction for a portion of the losses was disallowed. Defendant is therefore entitled to summary judgment. Without a restoration, plaintiffs have no basis to lose, even if their partnership interest was lost in a termination event.

### C. Plaintiffs' loss claim on the partnership interest depends on whether the partnership's activities were shams or were entered into with a profit motive; these are partnership level issues which may not be litigated in this partner level proceeding.

#### 1. Introduction

Plaintiffs contend that they sustained an ordinary loss, when the partnership, C85, allegedly terminated in 1995. Plaintiffs claim Donald Dismore's basis in his partnership interest was restored when partnership losses were disallowed and that their loss equals the

restored basis.

Generally, § 165(a) allows individual taxpayers a deduction for an uncompensated loss, provided the taxpayer incurred the loss in a transaction entered into for profit. *See* § 165(c)(2). As deductions are matters of legislative grace, the taxpayer bears the burden to establish entitlement to a § 165(a) loss. To meet that burden, a taxpayer must establish both that transactions in which the taxpayer invested had economic substance and that the taxpayer intended to profit from the investment. Thus, as part of their burden of proof, plaintiffs must demonstrate that the farming transactions giving rise to plaintiffs' disallowed partnership losses and claimed loss of basis had objective substance. In addition, because profit motive in the context of a partnership investment is measured at the partnership level, plaintiffs must demonstrate that the partnership had a profit motive for its farming transactions.

The economic substance or nature of a partnership's transactions and partnership profit motive are "partnership item[s]," as defined in § 6231(a)(3). Partnership items can only be established at the partnership level, for example, as reported on a partnership return and left unadjusted, as agreed in a settlement of partnership items, as adjusted by the IRS in a final partnership administrative adjustment, or as decided by a court in a partnership level proceeding. By contrast, in partner level proceedings, partnership items can not be litigated, and the treatment, if any, of partnership items at the partnership level is conclusive.

This case is a partner level proceeding. Therefore, plaintiffs are not permitted to offer evidence on the nature of their partnership's transactions or partnership profit motive. Rather, to demonstrate that the partnership transactions giving rise to their claimed loss had economic substance and that the partnership entered the transactions with a profit motive, plaintiffs must

direct the Court to the partnership level record. Only if the partnership level record establishes both economic substance and profit motive can plaintiffs satisfy their burden of proof on the profit motive element of their § 165(a) loss claim. Because it does not, plaintiffs have a failure of proof, and defendant is entitled to judgment as a matter of law.

**2. Argument**

As a general rule, § 165(a) allows as a deduction "any loss sustained during the taxable year and not compensated for by insurance or otherwise." Not all losses suffered by individuals, however, are deductible. Section 165(c) limits any loss deduction of an individual to three types:

> (1) losses incurred in a trade or business;
> (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and
> (3) except as provided in subsection (h), losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.

§ 165(c). Plaintiffs do not claim any losses were incurred in a trade or business, or arose from fire, storm, shipwreck, other casualty, or theft. Thus, plaintiffs are not entitled to a § 165(a) deduction, unless their claimed loss of restored basis was incurred in a transaction entered into for profit.

It is plaintiffs' burden to demonstrate entitlement to a § 165(a) deduction, including satisfaction of the profit motive requirement of § 165(c)(2). "[A]n income tax deduction is a matter of legislative grace and . . . the burden of clearly showing the right to the claimed deduction is on the taxpayer." *Indopco, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992) (quotation omitted); *see Baylin v. United States*, 43 F.3d 1451, 1454 (Fed. Cir. 1995) ("A taxpayer must prove each deduction from income.").

In certain circumstances, this burden may shift to the government to prove the taxpayer is not entitled to a claimed deduction. *See Blodgett v. Commissioner*, 394 F.3d 1030, 1035 (8th Cir. 2005); *Interex, Inc. v. Commissioner*, 321 F.3d 55, 58 (1st Cir. 2003). Under § 7491(a), the burden shifts for an individual taxpayer, if the taxpayer introduces "credible evidence" with respect to any factual issue relevant to ascertaining the liability of the taxpayer, and has satisfied certain threshold requirements (substantiation requirements, maintaining required records, and cooperating with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews). *See Blodgett*, 394 F.3d at 1035-36; *Long Term Capital Holdings v. U.S.*, 330 F.Supp.2d 122, 165-66 (D. Conn. 2004).[9] Since, as is discussed below, essential elements of the profit motive requirement of § 165(c)(2) are partnership level issues which may not be litigated in this partner level proceeding, burden shifting under § 7491 can not occur here.

To satisfy their burden under § 165(c)(2), plaintiffs must establish that the partnership transactions in which they invested had economic substance and that both they and their partnership intended to profit from the transactions. If the transactions in which a taxpayer

---

[9] "Credible evidence" is "'the quality of evidence, which after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness).'" *Blodgett*, 394 F.3d at 1035 (*quoting Griffin v. Commissioner*, 315 F.3d 1017, 1021 (8th Cir. 2003)) (emphasis in quotation omitted). Moreover, "[a]t a minimum, a taxpayer must produce credible evidence as to each material factual assertion necessary to support a claimed deduction before the burden shifts to the I.R.S." *Id.* at 1037.

Section 7491 applies "to court proceedings arising in connection with examinations commencing after [July 22, 1998]." Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 685. The term "examination" includes review of a claim for refund. *See* H.R. Conf. Rep. No. 105-599, at 242 (1998), *reprinted in* 1998-3 C.B. 747, 996 ("Similarly, the review of a claim for refund prior to issuing that refund is also intended to be an examination for purposes of this provision."). As plaintiffs submitted their refund claim on March 30, 1999, and, after review, the IRS disallowed it on December 18, 2002, § 7491 applies to this case.

invests lack objective economic substance, no deduction is allowed under § 165(c)(2), regardless of whether the taxpayer invests with a subjective intent to profit. *See e.g. Illes v. Commissioner*, 982 F.2d 163, 165-66 (6th Cir. 1992); *Marinovich v. Commissioner*, T.C. Memo. 1999-179, 1999 WL 339316, at *2 (May 28, 1999); *Andros v. Commissioner*, T.C. Memo. 1996-133, 1996 WL 116377, at *15-16 (March 18, 1996); *Wright v. Commissioner*, T.C. Memo. 1994-288, 1994 WL 276907, at *7 (June 23, 1994); *Omerza v. Commissioner*, T.C. Memo. 1992-206, 1992 WL 67401 (April 6, 1992). This principle flows from general economic substance doctrine - ". . . a lack of economic substance is sufficient to disqualify the transaction without proof that the taxpayer's sole motive is tax avoidance." *Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1355 (Fed. Cir. 2006). Indeed, the Federal Circuit has explicitly rejected the proposition that a transaction is disregarded only if it lacks both objective economic substance and subjective profit motive. *See id.* at 1355 n.14. Rather, the Federal Circuit focuses on objective realities - "the economic substance of a transaction must be viewed objectively rather than subjectively" and "economic substance is measured from an objective, reasonable viewpoint, not by the subjective views of the taxpayer's corporate officers." *Id.* at 1355, 1359.

Two prior decisions of the Court of Claims discuss the profit motive requirement of § 165(c)(2), and support the rule that subjective profit motive cannot support a § 165 deduction, unless the taxpayer also demonstrates objective substance in the underlying investment. *See Knetsch v. United States*, 348 F.2d 932 (Ct. Cl. 1965); *Brown v. United States*, 396 F.2d 459 (Ct. Cl. 1968). In both, the court found the requisite profit motive lacking and denied a § 165 deduction for out of pocket expenditures to invest in transactions without economic substance.

In *Knetsch*, although findings of lack of subjective profit motive were noted, the denial of

the § 165 deduction was based on lack of objective substance:

> Thus, the objective facts in this case, which can be used as indicators of the taxpayers' profit intention, show that they never intended to realize a profit on the transaction separate and apart from the tax benefits they hoped to derive therefrom. Under such circumstances, we hold that the loss taxpayers realized is not recognized as a loss incurred in a transaction entered for profit within the meaning of section 165(c)(2).

*Knetsch*, 348 F.2d at 939. Similarly, in *Brown*, the court focused on objective factors:

> Our evaluation of the legal relationships created by the venture and of those objective facts which indicate whether a subjective profit motive existed when the transaction was begun, leads us to conclude that plaintiff did not have any profit motive other than (or in addition to) the tax benefit which would accrue.

*Brown*, 396 F.2d at 466.[10]

Because neither *Knetsch* nor *Brown* involved an investment in a partnership and they predated the enactment of unified examination and litigation proceedings for partnership items, there was no discussion of the showing a partner must make to support a § 165 deduction for loss connected with an investment in a partnership. Thus, for example, neither comment on whose profit motive - partner's or partnership's - would be relevant to the analysis.

Nevertheless, both cases, along with *Coltec*, support the conclusion that a § 165(c)(2) deduction requires an investment in transactions with objective economic substance, not just a

---

[10] To be sure, the *Brown* opinion includes one sentence that suggests subjective profit motive can trump lack of objective substance and on its own satisfy the profit motive requirement of § 165(c)(2):

> Plaintiff might have overcome these [objective] facts by adequate proof of a subjective intention and expectation to profit from the transaction, but in the absence of any attempt to offer a modicum of proof plaintiff cannot recover.

*Id.* at 466-67. However, because plaintiff in that case offered no evidence of subjective profit motive, such sentence was unnecessary for the court's holding and is appropriately considered dicta. Accordingly, it should not be relied upon, particularly in light of the Federal Circuit's recent contradictory holdings in *Coltec*.

subjective belief in their profitability. Thus, because plaintiffs' claimed deduction arises from investing in partnership farming transactions, plaintiffs must establish that the partnership transactions had economic substance and were not shams. *See Marinovich*, 1999 WL 339316, at *2; *Wright*, 1994 WL 276907, at *7.

In addition, where taxpayers generally seek deductions derived from investments in partnerships, it is the partnership that must have a profit motive for entering the transactions generating those deductions (evaluated generally by reference to the motive of the general partners). *See Hill v. Commissioner*, 204 F.3d 1214, 1218 (9th Cir. 2000); *Hildebrand v. Commissioner*, 28 F.3d 1024, 1027 (10th Cir. 1994); *Wolf v. Commissioner*, 4 F.3d 709, 713 (9th Cir. 1993); *Cannon v. Commissioner*, 949 F.2d 345, 349-50 (10th Cir. 1991); *Evans v. Commissioner*, 908 F.2d 369, 373 (8th Cir. 1990); *Tallal v. Commissioner*, 778 F.2d 275, 276 (5th Cir. 1985); *Brannen v. Commissioner*, 722 F.2d 695, 703-04 (11th Cir. 1984); *see Andros*, 1996 WL 116377, at *15-16.

In sum, to satisfy their burden under § 165(c)(2), plaintiffs must demonstrate both 1) that, at the partnership level, their partnership's farming transactions had economic substance and were not shams, and that their partnership had a profit motive for entering the transactions; and 2) that, at the partner level, they had a profit motive for investing in the partnership.

However, plaintiffs are not permitted to introduce evidence in this proceeding regarding the nature of their partnership's transactions or the partnership's profit motive. The nature of a partnership transaction and a partnership's profit motive for entering a transaction are "partnership item[s]," as defined in § 6231(a)(3). *See River City Ranches #1 LTD. v. Commissioner*, 401 F.3d 1136, 1143-44 (9th Cir. 2005); *Treas. Reg.* § 301.6231(a)(3)-1(b) (1986)

("The term 'partnership item' includes the . . . legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc. Examples of these determinations are: . . . whether partnership activities have been engaged in with the intent to make a profit for purposes of section 183 . . . ."). Partnership item determinations can only be established at the partnership level. *See* § 6221. A Court is prohibited from altering them in a partner level proceeding, such as the present case, and the treatment of them, if any, at the partnership level is conclusive. *See* §§ 7422(h), 6230(c)(4); *Prochorenko v. United States*, 243 F.3d 1359, 1362-63 (Fed. Cir. 2001).

As this case is a partner level proceeding, plaintiffs are not permitted to offer evidence on the economic substance of their partnership's farming transactions or partnership profit motive. Instead, they must direct the Court to the partnership level record. Only if the partnership level record establishes that the partnership transactions had economic substance and the partnership had profit motive can plaintiffs satisfy their burden of proof on the profit motive element of their § 165 loss claim.

There is nothing, however, in the partnership level record, that establishes the substance and profit motive of the partnership transactions with respect to plaintiffs' disallowed loss deductions. Recall that plaintiffs seek a § 165 loss based on partnership losses disallowed under their settlement agreement. The disallowed losses, they claim, restored their basis in their partnership interest. Plaintiffs cannot make a showing with evidence at the partnership level that the farming transactions giving rise to their disallowed deductions were not shams.

The FPAA characterized the farming transactions as shams and lacking in economic substance. Plaintiffs' settlement agreements are silent on the matter. The Tax Court's decisions

attribute the partnership's disallowed losses to sham transactions. Thus, on the issues of substance and profit motive, the partnership level speaks only of sham transactions or not at all. There is no evidence to support the showing plaintiffs are required to make. Because plaintiffs have no evidence on essential elements of their loss claim, defendant is entitled to judgment as a matter of law.

## IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment should be granted.

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496
(202) 514-9440 (fax)

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/Steven I. Frahm
Of Counsel

March 30, 2007