IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 04-1787 T

Judge Francis M. Allegra

DONALD L. DISMORE and BETTYE G. DISMORE,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

PROPOSED FINDINGS OF UNCONTROVERTED FACT

Defendant submits the following proposed findings of uncontroverted fact in support of its motion for summary judgment [Doc. #58], in accordance with RCFC 56(h)(1).

1. Plaintiff Donald L. Dismore was a limited partner in Coachella-85 Partners ("C85"), a California limited partnership, from 1985 through 1995. *See Am. Compl*. [Doc. #42] ¶ 6; *see also Ex. 1, App. B* [Doc. #25] at 9-20, 28.

2. For the taxable period ending on December 31, 1985, C85 reported ordinary losses (resulting primarily from farming expenses), of which Donald Dismore's share was $77,985. *See Ex. 1, App. B* [Doc. #25] at 10, 13-14, 19; *Exs. 1-2, App.* [Doc. #36] at 18-19, 23; *Ex. 1, App. B* [Doc. #58] at B-1 ¶¶ 2, 4.

3. Plaintiffs reported their share of the loss deductions on their 1985 individual income tax return and used it to reduce their 1985 taxable income. *See Ex. 1, App. B* [Doc. #25] at 10, 13-14, 19; *Ex. 1, App. B* [Doc. #58] at B-1 ¶¶ 2, 4.

4. On April 10, 1991, the Internal Revenue Service ("IRS") issued a notice of final partnership administrative adjustment ("FPAA") to C85. *See Ex. 1, App.* [Doc. #36] at 14-21.

5. The FPAA reflected the IRS's determinations of adjustments to the reporting of partnership items on C85's 1985 partnership return. *See Ex. 1, App.* [Doc. #36] at 15.

6. Among other things, the IRS determined that approximately $9.1 million of ordinary loss deductions claimed by C85 (approximately $8.9 million of which were claimed as schedule F farming expenses) were not allowable, and adjusted the deductions downward to zero. *See Ex. 1, App.* [Doc. #36] at 18-19.

7. In addition to other reasons, the IRS determined the deductions were not allowable, because "[t]he partnership's activities constitute a series of sham transactions" and "[t]he partnership's activities lack economic substance." *See Ex. 1, App.* [Doc. #36] at 19.

8. On July 10, 1991, a notice partner of C85 filed a petition in the United States Tax Court, contesting the adjustments reflected in the FPAA, *Coachella-85 Partners, Daniel F. Vreeland, A Partner Other Than the Tax Matters Partner, Petitioner, v. Commissioner of Internal Revenue, Respondent*, Docket No. 15057-91, ("*Coachella-85*"). *See Ex. 1, App.* [Doc. #36] at 1-21.

9. The petition raised numerous challenges to the FPAA adjustments, including that the IRS erred in determining that the partnership's activities constituted a series of sham transactions and lacked economic substance. *See Ex. 1, App.* [Doc. #36] at 6-7.

10. By statute, § 6226(c), Donald Dismore was a party to *Coachella-85*.

11. On August 19, 1991, he elected, pursuant to § 6226(c)(2), to participate in the proceeding. *See Ex. 2, App. B* [Doc. #58] at B-6-B-11.

12. While *Coachella-85* was proceeding in the Tax Court, the IRS and the Dismores entered into a settlement agreement with respect to some of the FPAA determinations of the partnership items of C85 for 1985. *See Ex. 1, App. B* [Doc. #25] at 10; *Ex. 2, App.* [Doc. #36] at 23; *Ex. 1, App. B* [Doc. #58] at B-1 ¶¶ 2, 4.

13. The agreement became effective on July 17, 1997, when accepted and counter-signed by the IRS. *See Ex. 1, App. B* [Doc. #25] at 10; *Ex. 2, App.* [Doc. #36] at 23; *Ex. 1, App. B* [Doc. #58] at B-1 ¶¶ 2, 4.

14. The settlement specifies agreed amounts of certain of C85's 1985 partnership items. *See Ex. 1, App. B* [Doc. #25] at 10; *Ex. 2, App.* [Doc. #36] at 23; *Ex. 1, App. B* [Doc. #58] at B-1 ¶¶ 2, 4.

15. For example, in place of the disallowance in the FPAA of approximately $9.1 million in claimed farming expenses and other deductions, the settlement disallowed only approximately $3.7 million and contemplated the attendant adjustment to Donald Dismore's allocable share. *See Exs. 1-2, App.* [Doc. #36] at 18-19, 23; *Ex. 1, App. B* [Doc. #58] at B-1 ¶¶ 2, 4.

16. The agreement does not specify the reason for the agreed adjustments. *See Ex. 1, App. B* [Doc. #25] at 10; *Ex. 2, App.* [Doc. #36] at 23; *Ex. 1, App. B* [Doc. #58] at B-1 ¶¶ 2, 4.

17. The settlement was partial. The IRS and plaintiffs did not reach agreement on several of the partnership item determinations in the FPAA that were being contested in *Coachella-85*. For example, the agreement did not specify whether the partnership's activities were shams and lacked economic substance. *Compare Ex. 1, App.* [Doc. #36] at 1-21 *with Ex. 1, App. B* [Doc. #25] at 10; *Ex. 2, App.* [Doc. #36] at 23; *Ex. 1, App. B* [Doc. #58] at B-1 ¶¶ 2, 4;

*see also Weiner v. United States*, 389 F.3d 152, 156 n.2 (5th Cir. 2004).

18. Approximately six months after plaintiffs' July 17, 1997 settlement, on January 20, 1998, the IRS mailed plaintiffs a notice of computational adjustment, showing how application of the partial settlement affected their 1985 tax return. *See Ex. 1, App. B.* [Doc. #25] at 13-19.

19. Application resulted in the disallowance of $31,890 of the $77,985 that plaintiffs had reported as Donald Dismore's share of C85's 1985 farming expense and other loss deductions. *See Ex. 1, App. B* [Doc. #25] at 9-19; *Ex. 1, App. B.* [Doc. #58] at B-1 ¶¶ 2, 4.

20. The notice explained that, as a result of the settlement, $31,890 of the reported partnership losses were disallowed and attributable to tax motivated transactions, such that the resulting tax underpayment of $15,945 was subject to interest at the tax motivated rate, and that such interest computed to February 14, 1998 totaled $43,719.34 (comprised of regular interest of $31,941.37 and tax motivated interest of $11,777.97). *See Ex. 1, App. B.* [Doc. #25] at 13-19.

21. A corresponding assessment followed soon after in March 1998. *See Ex. 1, App. B.* [Doc. #25] at 20.

22. Plaintiffs filed a joint federal income tax return for calendar year 1995 on October 17, 1996, and paid the taxes reported due on that return. *See Am. Compl.* [Doc. #42] ¶ 5; *Answer* [Doc. #10] ¶ 5; *Ex. 3, App. B* [Doc. #58] at B-13-B-14.

23. Plaintiffs reported $195,117 in adjusted gross income, $131,187 in taxable income, and $6,521 in self employment tax. *See Ex. 3, App. B* [Doc. #58] at B-13.

24. Payment included with the return covered remaining tax liability, an estimated tax penalty, interest, and a failure to pay penalty, and a small refund issued. *See Ex. 3, App. B* [Doc.

#58] at B-13-B-14.

25. On March 30, 1999, plaintiffs mailed a claim for refund for their 1995 taxable year to the IRS - the claim was received two days later. *See Ex. 1, App. B* [Doc. #25] at 1-20, 28.[1]

26. In their refund claim, plaintiffs contended that the partial disallowance of their 1985 partnership losses, pursuant to their 1997 settlement agreement, effected a restoration of Donald Dismore's basis in C85. *See Ex. 1, App. B* [Doc. #25] at 5.[2]

27. Implicit in their contention is the additional claim that Donald Dismore previously reduced his basis in his partnership interest by his share of C85's 1985 loss. That is, without a prior reduction, there is nothing to restore. The amount of the restoration, according to plaintiffs, equals the amount of the disallowance, $31,890. *See Ex. 1, App. B* [Doc. #25] at 5.

28. Plaintiffs claim that Donald Dismore's basis after restoration was $31,890, up from his "ending basis" of zero at the end of 1995. *See Ex. 1, App. B* [Doc. #25] at 5.

29. Plaintiffs argue they lost $31,890 – the claimed restored basis – when the C85 partnership allegedly terminated in 1995. *See Ex. 1, App. B* [Doc. #25] at 5.[3]

30. After plaintiffs and the IRS entered into the settlement agreement, and while

---

[1] Exhibit 1 was provided to the United States by plaintiffs' counsel. It is not clear what pages following page 21 of the exhibit were included with plaintiffs' refund claim.

[2] Plaintiffs restate the administrative claim in this proceeding. *Compare Ex. 1, App. B* [Doc. #25] at 5-6 *with Am. Compl.* [Doc. #42] ¶ 10.

[3] Although not explicit, plaintiffs' refund claim assumes the alleged restoration as of 1985 (since plaintiffs' settlement agreement was reached in 1997 and the termination of C85 is alleged to have occurred in 1995).

Plaintiffs also claim that they did not report on their 1995 tax return the loss for which they seek a refund in this litigation. *See Am. Compl.* [Doc. #42] ¶ 10.

plaintiffs' refund claim was pending with the IRS, the Tax Court issued a decision in *Coachella-85* on July 19, 2001. The decision confirmed the FPAA determination that disallowed partnership deductions were attributable to sham partnership transactions:

> Pursuant to Rule 248(b) of the Tax Court's Rules of Practice and Procedure and Respondent's Motion for Entry of Decision, it is
>
> ORDERED and DECIDED: That the following statement shows the adjustments to adjustments to the partnership items of Coachella-85 Partners for the taxable year 1985, as set forth below:
>
> **1985 Year**
>
> **<u>ADJUSTMENTS TO ORDINARY INCOME:</u>**
>
> | Partnership Item | As Reported | As Determined |
> | --- | --- | --- |
> | Farming Expense Schedule F | $8,928,385.00 | $4,655,383.00 |
>
> . . .
>
> That the foregoing adjustments to partnership income and expense are attributable to transactions which lacked economic substance, as described in former I.R.C. § 6621(c)(3)(A)(v), so as to result in a substantial distortion of income and expense, as described in I.R.C. § 6621(c)(3)(A)(iv), when computed under the partnership's cash receipts and disbursements method of accounting;

*See Ex. 4, App. B* [Doc. #58] at B-17-B-18.

31. On December 18, 2002, the IRS disallowed plaintiffs' March 1999 refund claim. The disallowance letter stated:

> You have requested a deduction for an ordinary loss equal to your remaining basis in an AMCOR partnership. This treatment is based on abandonment or termination of that partnership interest. Internal Revenue Code section 165 governs these types of losses and states they are limited to losses incurred in a trade or business, incurred in a transaction entered into to for profit or losses arising from fire . . . or other casualty or theft. The various AMCOR partnerships were shams and had no economic substance. Thus, no loss is allowed under IRC section 165. The determination of profit motive is a partnership item determined at the partnership level.

> A determination was made that allows for the capital treatment of these losses. You may send a new claim to the address shown on this letter. Please label your claim(s) as "AMCOR claim" including a copy of the audit report and the tax return(s) for the year(s) of the claim(s).

*See Ex. 1, App. B* [Doc. #25] at 28.

32. On December 20, 2004, the Dismores filed the present suit.

Respectfully submitted,

s/Bart D. Jeffress
BART D. JEFFRESS
*Attorney of Record*
*U.S. Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
(202) 307-6496
(202) 514-9440 (fax)

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
STEVEN I. FRAHM
*Assistant Chief, Court of Federal Claims Section*

s/Steven I. Frahm
Of Counsel

March 30, 2007